[No. 708-1.    Division One—Panel 1.    April 26, 1971.]

THE STATE OF WASHINGTON, *Respondent*, v. CRAIG M. DUARTE, *Appellant.*

*Stern, Gayton, Neubauer & Brucker* and *O. J. Humphrey, III,* for appellant.

*Christopher T. Bayley, Prosecuting Attorney,* and *Stuart P. Riley, Deputy,* for respondent.

HOROWITZ, C.J.—Defendant was convicted in a case tried to the court below without a jury on two counts of selling a dangerous drug (lysergic acid diethylamide, or LSD-25). He appeals from the conviction and sentence imposed.

The facts as stated in the agreed statement, which raise the basic question in this appeal, are as follows:

"[Defendant], Craig M. Duarte, was charged by information filed May 14, 1970, with two counts of selling the dangerous drug LSD 25; the first count charged a sale on February 3, 1970, and the second count charged a sale on February 23, 1970.

"On several occasions, Officer James K. Yoshida, while assigned as an undercover agent of the Narcotics Detail of the Seattle Police Department, went to the [defendant's] house at . . . , Seattle, Washington, with the ultimate motive, but without the present intent, of making a purchase of dangerous drugs. On each of these initial visits there was general conversation about nothing in particular, together with incidental talk of possible future purchases of drugs in small amounts; however, no transaction was actually conducted or agreed upon.

"At the conclusion of each preliminary visit, there was no understanding that the discussion would continue regarding future purchases of drugs. Officer Yoshida conceded that he left the house without ever having received an invitation to return, and without ever having received any promises regarding the definite availability of drugs. The first two times he and Police Officer Donald H. Meyers returned to the [defendant's] house, it was without invitation and without prior announcement. On February 3, 1970, the date of the first alleged sale, Officer Yoshida again went to the [defendant's] house at . . . Seattle, Washington. On this occasion he was admitted by the [defendant] who recognized him from the previous visits. At some point during the ensuing conversation, Officer Yoshida or Officer Michael Houston offered to buy some LSD. Officer Houston thereafter purchased all there was available: two or three

capsules of LSD. On this occasion Officer Meyers was impliedly invited to return at an indefinite date.

"On February 23, 1970, the date of the second alleged sale, Officer Yoshida, together with Officer Meyers, again went to the [defendant's] house and again was admitted by [defendant]. Sometime after admittance into the house, the officers offered to buy another small quantity of drugs. On this occasion they purchased another two or three capsules of LSD.

"There was no other evidence of drug activity at [defendant's] house."

Defendant, prior to the trial, filed a motion to suppress evidence on the ground that there had been an unlawful search and seizure. The court denied the motion. Thereafter, the court permitted the introduction in evidence of the drugs purchased in the defendant's home. The basic question raised on this appeal is whether the court erred in permitting the introduction in evidence of the drugs purchased.

Preliminarily, it should be noted that the court below entered no findings of fact, the case being tried on an agreed statement of facts. It is normally reversible error if findings of fact and conclusions of law are not entered in criminal cases tried to the court. *State v. Wilks,* 70 Wn.2d 626, 424 P.2d 663 (1967); *State v. Russell,* 68 Wn.2d 748, 415 P.2d 503 (1966); *State v. Helsel,* 61 Wn.2d 81, 377 P.2d 408 (1962); RCW 4.44.050 and RCW 10.46.070. As pointed out in *Jones v. Bard,* 40 Wn.2d 877, 246 P.2d 831 (1952), an assignment of error based on the admission of evidence will not be considered unless the findings based on such admitted evidence are challenged. If not challenged, evidence submitted, whether properly or improperly, is merged in the court's findings of fact. *Simpson v. Hutchings,* 41 Wn.2d 287, 248 P.2d 572 (1952); *Jones v. Bard, supra.* In the instant case, however, the only question contested was the admissibility of the evidence raised on a motion to suppress, and submitted to the court on the agreed statement of facts. After the court ruled the evidence admissible,

defendant, by virtue of the agreed statement of facts, waived his right to a trial. Since defendant's guilt was, in effect, stipulated after the evidence was ruled admissible, it was not necessary for the trial court to enter a finding on the question. *See Cogswell v. Cogswell,* 50 Wn.2d 597, 313 P.2d 364 (1957); 89 C.J.S. *Trial* § 612(b) (1955). Under these circumstances, and in view of the fact that only one error is assigned and argued, we think it would be pointless to remand the case for entry of formal findings of fact so that we could consider then what we are now in the position to consider. We therefore consider the error assigned and the question of admissibility of the evidence properly before us.

The question here involves the admissibility into evidence of the drugs sold by defendant in the course of a face to face voluntary sales transaction to an undercover agent —a stranger—lawfully present in the home of defendant pursuant to at least the latter's implied invitation. The legal question is whether the narcotic sale, which took place in defendant's home, is a subject of Fourth Amendment protection. If it is so protected, the absence of a search warrant would require that the motion to suppress be granted. *See* Comment, *The Applicability of the "New" Fourth Amendment to Investigations by Secret Agents: A Proposed Delineation of the Emerging Fourth Amendment Right to Privacy,* 45 Wash. L. Rev. 785 (1970); *Katz v. United States,* 389 U.S. 347, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967); *Berger v. New York,* 388 U.S. 41, 18 L. Ed. 2d 1040, 87 S. Ct. 1873 (1967); *Mapp v. Ohio,* 367 U.S. 643, 6 L. Ed. 2d 1081, 81 S. Ct. 1684 (1961). No electronic surveillance problem exists so as to give rise to the additional issue of violation of a possible constitutional right of privacy. *See* dissenting opinion of Mr. Justice Douglas in *Osborn v. United States,* 385 U.S. 323, 17 L. Ed. 2d 394, 87 S. Ct. 429 (1966). Nevertheless, the electronic surveillance cases recognize the principles on the basis of which the admissibility in evidence of the drugs here involved may be upheld.

*Hoffa v. United States,* 385 U.S. 293, 17 L. Ed. 2d

374, 87 S. Ct. 408 (1966), supports the propriety of admitting the drug evidence below. In that case a friend invited by Hoffa to visit and stay with him in his hotel room, who was treated by the court, for the purposes of the opinion, as a paid informer for the government, heard incriminating conversations carried on by the defendant in his presence. In holding the informer's evidence of the conversations admissible, the court pointed out:

What the Fourth Amendment protects is the security a man relies upon when he places himself or his property within a constitutionally protected area, be it his home or his office, his hotel room or his automobile. . . .

. . . The petitioner . . . was not relying on the security of the hotel room; he was relying upon his misplaced confidence that Partin would not reveal his wrongdoing. . . .

Neither this Court nor any member of it has ever expressed the view that the Fourth Amendment protects a wrongdoer's misplaced belief that a person to whom he voluntarily confides his wrongdoing will not reveal it.

(Footnotes omitted.) *Hoffa v. United States, supra* at 301-02.

Two years after *Hoffa,* the Supreme Court of Washington decided *State v. Wright,* 74 Wn.2d 355, 444 P.2d 676 (1968), *noted,* 45 Wash. L. Rev. 411 (1970). That case held admissible evidence obtained by an informer, equipped with an electronic transmitting device, who had been invited into the defendant's home. The court followed the principle of *Hoffa* and, in accordance with earlier United States Supreme Court opinions[1] which the court determined were

---

[1] The court held that notwithstanding *Katz v. United States,* 389 U.S. 347, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967), the continued viability of *On Lee v. United States,* 343 U.S. 747, 96 L. Ed. 1270, 72 S. Ct. 967 (1952); *Lopez v. United States,* 373 U.S. 427, 10 L. Ed. 2d 462, 83 S. Ct. 1381 (1963); and *Osborn v. United States,* 385 U.S. 323, 17 L. Ed. 2d 394, 87 S. Ct. 429 (1966), required this result. *State v. Wright, supra,* distinguished *United States v. White,* 405 F.2d 838 (7th Cir. 1969), which case, in turn, distinguished the *Lopez* and *Osborn* cases, and treated the *On Lee* decision as no longer viable. However, *United States v. White, supra,* was reversed in an opinion filed April 5, 1971 by the Supreme Court of the United States. *United States v. White,* 401 U.S. 745

not overruled *sub silentio* by *Katz v. United States, supra,* extended it to include an agent wired for sound.

The analysis of the Washington Supreme Court in *Wright* has been vindicated in the plurality opinion of *United States v. White,* 401 U.S. 745, 28 L. Ed. 2d 453, 91 S. Ct. 1122 (1971). There a government informer elicited incriminating statements from the defendant on eight different occasions, including once in the defendant's home. These statements were monitored by police officers by use of electronic devices. The court held that the eavesdropping did not constitute an illegal search and seizure. Relying upon *Hoffa v. United States, supra,* which held that the Fourth Amendment does not protect a defendant from the risk that his incriminating conversations will later be divulged by one in whom he confides, the court in *United States v. White, supra,* went one step further and held that the defendant must also assume the risk that the person to whom he speaks is equipped with a recording device. The plurality opinion of the court states:

> Inescapably, one contemplating illegal activities must realize and risk that his companions may be reporting to the police. . . . Given the possibility or probability that one of his colleagues is cooperating with the police, it is only speculation to assert that the defendant's utterances would be substantially different or his sense of security any less if he also thought it possible that the suspected colleague is wired for sound.

*United States v. White, supra* at 752. Thus, the principle of *Hoffa* was extended to electronic eavesdropping committed with the consent of one of the parties, and it was applied to conversation in the defendant's home with a police agent who was not the defendant's close friend.

It is contended, however, that the Fourth Amendment to be inapplicable requires that the person invited into a suspect's home and with whom a conversation is voluntarily

---

28 L. Ed. 2d 453, 91 S. Ct. 1122 (1971). A plurality of the justices of that court recognized the continued viability of the decisions relied on in *State v. Wright, supra.*

held, and a sale of drugs voluntarily made, must be a friend and not a stranger. The basis of this contention is a footnote in *Hoffa v. United States, supra* at 302 n.6, in which the court stated:

> The applicability of the Fourth Amendment if Partin had been a stranger to the petitioner is a question we do not decide. *Cf. Lewis v. United States* . . .

In our opinion, the footnote was merely an invitation for further consideration, not an indication that, when presented with a case involving a stranger, the court would apply a different rule.[2] Moreover, the question was subsequently resolved by *United States v. White, supra,* where the rule in *Hoffa* was applied to a government agent who was a relative stranger and who had merely engaged in narcotic transactions with the defendant. Whether the informer was a friend or stranger was not treated as controlling. It is true that the status of the person invited may bear on whether the invitation was voluntarily extended and conversations or transactions thereafter had with such person were in fact freely and voluntarily undertaken. In the case of a supposed friend, the invitor may be put off his guard and speak more freely than he would to a stranger. However, if a conversation with a friend is admissible upon the theory of misplaced confidence as in *Hoffa v. United States, supra,* then a conversation with a stranger, with respect to whom the invitor is more likely to be on his guard, should likewise be admissible. *See The Supreme*

---

[2] *On Lee v. United States,* 343 U.S. 747, 96 L. Ed. 1270, 72 S. Ct. 967 (1952), involved an old acquaintance; *Lopez v. United States,* 373 U.S. 427, 10 L. Ed. 2d 462, 83 S. Ct. 1381 (1963), involved an internal revenue agent known to be such—not a friend; *Lewis v. United States,* 385 U.S. 206, 17 L. Ed. 2d 312, 87 S. Ct. 424 (1966), involved an undercover federal narcotics agent posing as a customer; *Osborn v. United States,* 385 U.S. 323, 17 L. Ed. 2d 394, 87 S. Ct. 429 (1966), involved a purported friend—a paid informer—of defendant's client and at best an acquaintance of the defendant himself. *Hoffa* involved a purported friend of the defendant, but in fact a paid informer. These cases did not turn upon the friend or stranger status of the person invited, although the status of the person is mentioned in the court's opinions.

*Court, 1966 Term,* 81 Harv. L. Rev. 110, 193 n.13 (1967). Furthermore, if as held in *State v. Wright, supra,* and now *United States v. White, supra,* the electronic recordings of conversations held by the secret police officer or informer are admissible, then the admissibility of testimony by one or more parties to the conversation in face to face encounter is likewise admissible. *See Lewis v. United States,* 385 U.S. 206, 17 L. Ed. 2d 312, 87 S. Ct. 424 (1966).

Nor can it be said that the cases of *United States v. White, supra; Hoffa v. United States, supra;* and *Lewis v. United States, supra,* apply only when the invitation to enter defendant's home is expressly extended to the person with whom the conversation is then held. These conclusions become apparent when one considers the reason for the admissibility of the evidence in the case of an express invitation. The objections to evidence obtained in the course of a non-consensual search is based upon the claimed violation of the Fourth Amendment against unreasonable searches and seizures, and in Washington the claimed violation of Const. art. 1, § 7, implemented by RCW 10.79.040. But these constitutional and statutory rights may be waived either by express consent *(State v. Tate,* 74 Wn.2d 261, 444 P.2d 150 (1968); *State v. Clevenger,* 69 Wn.2d 136, 417 P.2d 626 (1966); *McNear v. Rhay,* 65 Wn.2d 530, 398 P.2d 732 (1965); *State v. Smith,* 50 Wn.2d 408, 314 P.2d 1024 (1957)), or by implied consent or by implied waiver. *State v. Haverty,* 3 Wn. App. 495, 475 P.2d 887 (1970). Invitation to enter is but another form of words for consent to enter, and just as consent in other branches of the law may be implied as well as express, and may be proved by circumstantial evidence as well as by direct evidence, so invitation may be implied from circumstances as is done in civil cases. *See* 38 Am. Jur. *Negligence* § 98 (1941). To hold that only express words may prove invitation is to sacrifice substance to form and thus give to the use of formal words an efficacy long since abandoned in favor of proof of intention, consent, waiver or other mental states by evidence circumstantial as well as direct. We are

unaware of any case that holds that consent or invitation, even though they exist in fact, will not be recognized unless there be express words to evidence them.

In the instant case, the undercover agent or police officers, after prior visits to the defendant never objected to, were voluntarily admitted by the latter into his home and, in the course of voluntary conversations, defendant made a sale of LSD-25 to them. The defendant made no effort to exclude the officers or to decline to converse with them, nor does the agreed statement show that he raised any objection whatsoever to selling the drug involved. Under these facts and reasonable inferences therefrom, the court had a right to find that the admission of the agents to the defendant's home was by implied invitation and the conversations thereafter had freely and voluntarily undertaken. This is not a case of illegal violation of the security of one's home prohibited by the Fourth Amendment or prohibited by Const. art. 1, § 7, implemented by RCW 10.79.040. It is rather a case of misplaced confidence in the identity of the strangers to whom defendant voluntarily sold the LSD-25. Under the principles discussed and particularly in light of *Hoffa v. United States, supra, Lewis v. United States, supra,* and now *United States v. White, supra,* the evidence of the drugs purchased was properly admitted.

The judgment is affirmed.

UTTER and WILLIAMS, JJ., concur.
Petition for rehearing denied May 27, 1971.
Review denied by Supreme Court July 1, 1971.