947 P.2d 240 (1997)
133 Wash.2d 679
STATE of Washington, Respondent,
v.
Larry D. GROOM, Petitioner.
No. 63951-5
Supreme Court of Washington, En Banc.
Argued October 10, 1996.
Decided November 20, 1997.
*242 Browne & Ressler, John Henry Browne, Seattle, for petitioner.
John D. Knodell, Grant County Prosecutor, Stephen J. Hallstrom, Deputy County Prosecutor, for respondent.
*241 MADSEN, Justice.
The State seeks to prosecute Defendant Larry Groom for criminal trespass, official misconduct, and unlawful search without a warrant under RCW 10.79.040 and .045. The trial court dismissed the charges on a Knapstad motion. The Grant County Superior Court affirmed dismissal of the criminal trespass and official misconduct charges, but reversed as to the unlawful search charge. The Court of Appeals held that none of the charges were properly dismissed, and remanded for trial. Defendant contends that he is immune as a matter of law from prosecution for unlawful search without a warrant. We affirm the Court of Appeals, although on different grounds.

FACTS[1]
In 1993, Defendant was the Chief of Police for Soap Lake. On February 1, 1993, just before midnight, Defendant went to Officer Joe Mandoli's trailer home, 3.3 miles outside Soap Lake's city limits. He maintains he went to the trailer to suspend Mandoli pending investigation of a complaint that Mandoli had sexually harassed a female suspect.[2] Defendant had received information that the suspect's husband had made threats against Mandoli. He did not have a search warrant.
Defendant maintains that when he arrived at the trailer the front sliding glass door of the trailer was ajar, the lights were on inside, *243 and Mandoli's patrol car was unlocked with police department keys hanging from the turn signal. Mandoli's coat and briefcase were in the patrol car. The curtain at the door of the trailer was drawn back, and Defendant could see that the trailer was in disarray. A firearm was leaned up against a wall (this later proved to be an air rifle or BB gun). Defendant claims he called out for Mandoli but there was no response.
Defendant did not call for aid or assistance while at the scene. Instead, he left the trailer and the patrol car unlocked, and drove into Soap Lake to the police station where he called Mandoli's home, receiving no answer. He then picked up Officer Tom Jones and returned to Mandoli's residence. He was gone from the trailer approximately 8 to 10 minutes.
When they arrived, Defendant approached the trailer while Jones went to the patrol car. Although Defendant claims the door was still open, Jones did not notice the door open. Jones also said he did not hear Defendant express any concern about Mandoli's welfare. When Jones arrived at the door, Defendant had already opened the door. Jones had not heard Defendant knock or call Mandoli's name. Both officers entered the trailer. Defendant opened one bedroom door but did not turn on the light, enter the room, or call Mandoli. Defendant did enter the second bedroom, Mandoli's bedroom, and called Jones inside. He pointed out a gun in its holster under the chair next to the bed and a.22 rifle leaning up against a wall. These weapons were Mandoli's personal weapons. Jones did not think the position of these guns was unusual. Jones then saw Defendant look under the mattress for several seconds. Defendant found nothing, and set the mattress down. Uncomfortable with the search, Jones returned to the living room, but was called back into the bedroom where Defendant showed him a lighter. Jones left the bedroom again, but was called back again to help remove Mandoli's uniforms, which Jones took to the patrol car along with a police charger and a department portable radio that was on the kitchen table.
Defendant called Lieutenant Scott Stokoe to meet Defendant at Mandoli's home. When Stokoe arrived, he told Defendant they were not supposed to be in Mandoli's residence. Defendant indicated he wanted Stokoe to be a witness to removal of the uniforms and equipment. Stokoe did not hear Defendant mention any concern about Mandoli's welfare. Before the officers left the trailer, Defendant secured it.
On the way back to the police station, Defendant passed Mandoli. Defendant returned to Mandoli's residence and then took Mandoli to Soap Lake. On the way, he told Mandoli he had found the trailer open and the lights on and the patrol car unlocked, and had searched the residence. At the police station, Defendant told Mandoli about the complaint against him and the internal investigation. Mandoli was suspended.
Mandoli maintains that when he left his trailer he left the door closed, his personal gun under a magazine by his bed, and the patrol car locked. He claims that when he returned he noticed the closet door open, his gun uncovered, and some personal items such as notebooks, files, and pens missing.
Mandoli filed a complaint with the Grant County Sheriff's Office. On July 15, 1993, Defendant was charged with first degree criminal trespass, official misconduct, and unlawful search. He moved for dismissal pursuant to State v. Knapstad, 107 Wash.2d 346, 729 P.2d 48 (1986). The trial court granted the motion and dismissed all three counts against Defendant. On the State's appeal, the superior court reinstated the unlawful search count. The Court of Appeals granted both parties' motions for discretionary review and remanded for trial on all three counts. State v. Groom, 80 Wash.App. 717, 911 P.2d 403, review granted, 129 Wash.2d 1023, 919 P.2d 600 (1996). Defendant then petitioned for discretionary review by this court, which was granted. The issues raised in the petition for review concern the unlawful search charge.

ANALYSIS
Defendant moved to dismiss on the ground that the State lacked sufficient evidence to prove its case. Under Knapstad, 107 Wash.2d at 356, 729 P.2d 48, such a *244 motion should be initiated by a sworn affidavit "alleging there are no material disputed facts and the undisputed facts do not establish a prima facie case of guilt." Then "[t]he State can defeat the motion by filing an affidavit which specifically denies the material facts alleged in the defendant's affidavit. If material factual allegations in the motion are denied or disputed by the State, denial of the motion to dismiss is mandatory." Id. On the other hand, "[i]f the State does not deny the undisputed facts or allege other material facts," the court must decide "whether the facts which the State relies upon, as a matter of law, establish a prima facie case of guilt." Id. at 356-57, 729 P.2d 48. "Since the court is not to rule on factual questions, no findings of fact should be entered." Id. at 357, 729 P.2d 48.
What facts are material depends upon the elements of the charged crime. Defendant was charged pursuant to RCW 10.79.040 and .045. His is the first reported appellate case involving prosecution under these statutes, which were enacted in 1921. Laws of 1921, ch. 71, §§ 1, 2. RCW 10.79.040 provides:
It shall be unlawful for any policeman or other peace officer to enter and search any private dwelling house or place of residence without the authority of a search warrant issued upon a complaint as by law provided.
RCW 10.79.045 provides:
Any policeman or other peace officer violating the provisions of RCW 10.79.040 shall be guilty of a gross misdemeanor.
With respect to the "enter[ing] and search [of] private dwelling house or place of residence," RCW 10.79.040 implements article I, section 7 of the Washington State Constitution. State v. Cyr, 40 Wash.2d 840, 842, 246 P.2d 480 (1952), overruled on other grounds in State v. Ringer, 100 Wash.2d 686, 674 P.2d 1240 (1983); see also State v. Carpenter, 63 Wash.2d 577, 579, 388 P.2d 537 (1964); State v. Sanders, 8 Wash.App. 306, 309, 506 P.2d 892 (1973); State v. Duarte, 4 Wash.App. 825, 833, 484 P.2d 1156 (1971). Constitution article I, section 7 provides that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." Article I, section 7 is more protective of the home than is the Fourth Amendment, and the cases reflect the heightened constitutional protection afforded the home under the state constitution. E.g., State v. Young, 123 Wash.2d 173, 185, 867 P.2d 593 (1994); State v. Berber, 48 Wash. App. 583, 589, 740 P.2d 863, 74 A.L.R.4th 491 (1987) (a person's home is a highly private place); State v. Solberg, 122 Wash.2d 688, 861 P.2d 460 (1993). It is apparent that, in enacting RCW 10.79.040 and .045, the Legislature intended potential criminal liability to serve at least in part as a deterrent to unconstitutional searches.
The Court of Appeals observed that read literally, the statutes would criminalize all warrantless searches regardless of whether a search was justified by a recognized exception to the warrant requirement. State v. Groom, 80 Wash.App. at 720-21, 911 P.2d 403. Drawing from the qualified immunity of police officers from civil suit where they act in good faith in the performance of their official functions, the court held that a police officer could be liable under RCW 10.79.040 only if the search was undertaken in bad faith. Id. at 721-22, 911 P.2d 403. The court held the State's allegations were sufficient to create a triable issue of fact as to whether Defendant searched Mandoli's home in order to discover any evidence which might be useful in the internal investigation of Mandoli, and thus engaged in a bad faith search.
The difficulty with the Court of Appeals analysis is that it overlooks prior interpretations of RCW 10.79.040. The statute has always been interpreted in light of exceptions to the warrant requirement which have been recognized under article I, section 7. Thus, no violation of the statute occurs where a search is made incident to a lawful arrest, State v. Thomas, 183 Wash. 643, 646, 49 P.2d 28 (1935), a consensual search is made, State v. Smith, 50 Wash.2d 408, 314 P.2d 1024 (1957), and State v. Duarte, 4 Wash.App. 825, 484 P.2d 1156 (1971), or where a search is made under exigent circumstances, State v. Campbell, 15 Wash.App. 98, 547 P.2d 295 (1976) and State v. Sanders, *245 8 Wash.App. 306, 506 P.2d 892 (1973). Where an exception is recognized, the officer is not required to have a search warrant "as by law provided[,]" and no violation of RCW 10.79.040 occurs. Thus, RCW 10.79.040 is interpreted consistently with article I, section 7, and criminal liability does not arise under RCW 10.79.045 when a police officer conducts a constitutionally valid warrantless search.
Only a violation of RCW 10.79.040 results in criminal liability under RCW 10.79.045. Manifestly, criminal liability under RCW 10.79.040 does not arise based upon a constitutional search.
Additionally, there is no justification for the introduction of a good faith-bad faith inquiry into the determination of criminal liability under RCW 10.79.040 and .045. RCW 10.79.045 plainly says that any violation of RCW 10.79.040 is a gross misdemeanor. A violation of RCW 10.79.040 occurs whenever there has been an unconstitutional search, whether the officer acted in good faith or bad faith.[3]
The Court of Appeals injection of a "bad faith" element is unmistakably an addition to search and seizure law in this state.[4] Since both the exclusionary rule and RCW 10.79.040 and .045 may serve to deter unconstitutional behavior, addition of a bad faith component would alter the equationunconstitutional conduct would trigger the exclusionary rule but would not result in potential liability under RCW 10.79.045. Because RCW 10.79.040 simply does not contain a good or bad faith component, and in light of the interplay between the statute and the constitutional provision, we disapprove addition of a bad faith element.
Defendant also seems to suggest, and the Court of Appeals seemed to agree, that the knowledge of the officer is a relevant consideration. See Supp. Br. of Pet'r at 13 (discussing qualified immunity under 42 U.S.C. § 1983); Groom, 80 Wash.App. at 722 n. 2, 911 P.2d 403 (noting that in the civil context, qualified immunity is available unless, among other things, the officer knew or reasonably should have known the action violated the constitution) (citing Hocker v. Woody, 95 Wash.2d 822, 824-25, 631 P.2d 372 (1981)). However, just as the statute does not include a good or bad faith component, it also does not contain a mental element requirement. First, there is no expression of any required mental state in the statutes. Second, while in some cases where a statute criminalizing conduct fails to state a mental element, a court will read a mental element into the statute, this is not such a case.
Whether intent or guilty knowledge or some other mental element is an essential element of a crime is a matter to be determined by the Legislature. State v. Cleppe, 96 Wash.2d 373, 378, 635 P.2d 435 (1981), cert. denied, 456 U.S. 1006, 102 S.Ct. 2296, 73 L.Ed.2d 1300 (1982) (citing State v. Henker, 50 Wash.2d 809, 812, 314 P.2d 645 (1957)); see also Staples v. United States, 511 U.S. 600, 605-06, 114 S.Ct. 1793, 1796-97, 128 L.Ed.2d 608 (1994). The Legislature may create strict liability crimes. State v. Rivas, 126 Wash.2d 443, 452, 896 P.2d 57 (1995) (citing Cleppe, 96 Wash.2d at 380, 635 P.2d 435; State v. Stroh, 91 Wash.2d 580, 583-84, 588 P.2d 1182, 8 A.L.R.4th 760 (1979); Morissette v. United States, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952)).
Thus, whether a statute defines a strict liability crime is a question of statutory construction focusing on legislative intent. State v. Bash, 130 Wash.2d 594, 604-05, 925 P.2d 978 (1996). The first indicator of legislative intent is the language of the particular statute. Here, RCW 10.79.040 does not provide that a warrantless search is justified based upon the mental state of the officer *246 conducting the search. Either a warrantless search falls within one of the exceptions to the warrant, and thus is a constitutional warrantless search, or it does not. Further, RCW 10.79.045 does not state that only a violation of RCW 10.79.040 with intent, or knowledge, or some other mental state results in criminal liability. Instead it says that any police officer violating RCW 10.79.040 shall be guilty of a gross misdemeanor. RCW 10.79.045. Since a violation of RCW 10.79.040 may occur regardless of the mental state of the officer conducting the search, by the statutes' plain terms the mental state of the officer is irrelevant to the question of criminal liability.
A second indicator of legislative intent is legislative history. Reading RCW 10.79.040 as a strict liability crime is consistent with legislative intent that RCW 10.79.040 implements article I, section 7. Especially in light of the heightened protection afforded the home under article I, section 7, the flat prohibition of unconstitutional searches in RCW 10.79.040 does not support a looser standard of constitutional compliance than under article I, section 7. Whether an officer intended to violate, or knew or should have known his or her conduct violated article I, section 7 has never been a relevant consideration in determining whether an unconstitutional search has occurred.
Another factor which strongly indicates that the Legislature did not intend a mental element is the seriousness of the harm to the public. See Bash, 130 Wash.2d at 605, 925 P.2d 978. The danger of unconstitutional searches of the home simply cannot be overstated.
We conclude that there is no good or bad faith component to RCW 10.79.040 or .045, nor is there any mental element.
We also note that however much members of this court may think that a statute should be rewritten, it is imperative that we not rewrite statutes to express what we think the law should be. We simply have no such authority. State v. Mollichi, 132 Wash.2d 80, 87, 936 P.2d 408 (1997); see Graham Thrift Group, Inc. v. Pierce Cy., Country Park, Inc., 75 Wash.App. 263, 267, 877 P.2d 228 (1994). This is true even if the results appear unduly harsh. Geschwind v. Flanagan, 121 Wash.2d 833, 841, 854 P.2d 1061 (1993).
We next turn to Defendant's contention that he is immune from suit because he reasonably believed his conduct was lawful under statutory obligations to protect police property and under an emergency exception to the warrant requirement. He also contends this immunity issue should be decided as a preliminary matter of law.
The cases upon which Defendant relies addressing police officer immunity are all cases involving questions of civil liability. We do not agree that the civil qualified immunity standard applies to criminal prosecutions. See O'Shea v. Littleton, 414 U.S. 488, 503, 94 S.Ct. 669, 679, 38 L.Ed.2d 674 (1974); United States v. Dee, 912 F.2d 741, 744 (4th Cir.1990); United States v. Hastings, 681 F.2d 706, 710-12, 65 A.L.R. Fed. 810 (11th Cir.1982); United States v. Diggs, 613 F.2d 988, 1001 (D.C.Cir.1979); United States v. Isaacs, 493 F.2d 1124, 1142-44 (7th Cir.1974). Further, criminal liability under the statutes may arise only where a police officer conducts an unlawful search. It makes no sense to extend qualified immunity to the only persons the Legislature intended be liable under RCW 10.79.040 and.045. Because we do not agree that the law concerning civil qualified immunity applies in this case, we do not reach defendant's contention that such immunity must be decided as a preliminary matter of law.
Defendant next contends that the Court of Appeals decision conflicts with application of RCW 10.79.040 as a procedural rule implementing article I, section 7 and providing for the exclusion of evidence where an unlawful search occurs. He maintains that the Washington courts "have consistently chosen the exclusionary rule over criminal convictions as a remedy where police misconduct is alleged." Supp. Br. of Pet'r at 7. He reasons that RCW 10.79.040 can therefore be used only to exclude evidence and that it will not support a criminal charge.
We disagree. As noted, this is the first reported case of prosecution under the statute, *247 and accordingly there is no basis for concluding that the courts have "chosen" the exclusionary rule over criminal prosecution. Further, there is no reason why both remedies cannot be available. Most importantly, the Legislature has unambiguously stated that a police officer or any other peace officer who violates RCW 10.79.040 "shall be guilty of a gross misdemeanor." RCW 10.79.045. Defendant cites no authority for the proposition that reliance on the exclusionary rule negates the Legislature's clear intent to criminalize violations of RCW 10.79.040.
Defendant also maintains that he cannot be prosecuted for unlawful search because there are no reported cases of prosecution under the statute despite its long existence. He cites no authority for this proposition, and we decline to address it. See RAP 10.3(a)(5); State v. Gentry, 125 Wash.2d 570, 610, 888 P.2d 1105, cert. denied, __ U.S. ___, 116 S.Ct. 131, 133 L.Ed.2d 79 (1995).
Defendant next contends that RCW 10.79.040 is void for vagueness because it does not give adequate notice of proscribed conduct in light of the exceptions to the warrant requirement. He contends that the statute fails to incorporate either these exceptions or the concept of qualified immunity. As we have explained, the statute has always been construed to permit constitutionally permissible warrantless searches. And, as discussed above, we reject Defendant's claim that the statute must incorporate qualified immunity conceptscivil qualified immunity has no place in this criminal prosecution.
A statute is void for vagueness under the Fourteenth Amendment if it does not define the criminal offense with sufficient definiteness so that ordinary people can understand what conduct is prohibited, or if it fails to provide ascertainable standards of guilt to protect against arbitrary enforcement. State v. Thorne, 129 Wash.2d 736, 770, 921 P.2d 514 (1996); City of Spokane v. Douglass, 115 Wash.2d 171, 178, 795 P.2d 693 (1990). A statute is presumed constitutional and the challenging party bears a heavy burden of proving unconstitutionality beyond a reasonable doubt. Thorne, 129 Wash.2d at 769-70, 921 P.2d 514; State v. Myles, 127 Wash.2d 807, 812, 903 P.2d 979 (1995). Where a void for vagueness challenge is brought, a party may make only an "as applied" challenge unless the challenge involves First Amendment rights. Thorne, 129 Wash.2d at 770, 921 P.2d 514; Myles, 127 Wash.2d at 811 n. 2, 903 P.2d 979.
The void for vagueness challenge is brought in this case following a pretrial Knapstad motion. Defendant contends that the facts will show that he entered Mandoli's residence pursuant to a recognized exception to the warrant requirement. If that turns out to be the case, he entered lawfully under RCW 10.79.040 and his vagueness challenge will be mooted. The State disputes the facts, though, and as a result an as applied challenge is impossible to evaluate at this stage of the proceedings. In any case, a sufficiently specific prior judicial construction of a statute can save a statute from unconstitutional vagueness, as the statute is then read as the court has interpreted it. State v. Richmond, 102 Wash.2d 242, 245, 683 P.2d 1093 (1984); Wainwright v. Stone, 414 U.S. 21, 94 S.Ct. 190, 38 L.Ed.2d 179 (1973). Accordingly, the statute provides notice that searches falling within exceptions to the warrant requirement are not proscribed, while warrantless searches not falling within a judicially recognized exception are.
We next turn to the question whether Defendant's Knapstad's motion to dismiss the unlawful search charge should have been granted. The State has alleged facts comprising a prima facie case, and therefore the motion to dismiss should not have been granted by the trial court. The State alleges that Defendant went to Mandoli's residence to discuss the internal investigation concerning the complaint against Mandoli. The State further alleges that rather than enter the unlocked residence and look for Mandoli, as would be appropriate if Defendant believed Mandoli's welfare were threatened, Defendant drove back to Soap lake and called the residence, taking some 8 to 10 minutes to do so. Further, when Defendant returned with Officer Jones, he expressed no concern about safety or Officer Mandoli's welfare to Jones. Nor did he express any such concern to Officer Stokoe when he arrived. *248 Instead, Defendant began searching for evidence, looking under the mattress and in the closet in Mandoli's bedroom while ignoring completely another bedroom in the residence.
Under these circumstances alleged by the State, a trier of fact could conclude that there were no circumstances justifying Defendant's warrantless entry and search of the residence. The facts as the State alleges them, if proved, are sufficient for the trier of fact to conclude that Defendant unlawfully searched Mandoli's residence without a warrant in order to find evidence relating to the internal investigation, and took the uniforms and police equipment as part of a plan to terminate or suspend Mandoli.
While Defendant offers a different explanation of events, our role in assessing the propriety of granting a Knapstad motion does not include deciding whose version of events is correct. The issue is whether the State has sufficiently countered Defendant's claim that there are no material disputed facts and that the undisputed material facts do not establish a prima facie case of guilt.
Finally, it is not for this court to question the wisdom of the Legislature in enacting a criminal statute, provided it is a constitutional enactment, and the Legislature may, as noted, establish strict liability crimes. While the intent of RCW 10.79.040 and .045 is in part deterrence of unlawful searches, it is true that in the over 75 years since the statutes were enacted the exclusionary rule, not the possibility of criminal liability, has protected the community against unconstitutional searches. RCW 10.79.045 has rarely, if ever, been enforced. As a deterrent to police misconduct, it is arguably outdated and unnecessary. The Legislature may wish to consider whether RCW 10.79.045 should remain on the books. To repeat, however, it is simply not up to this court to rewrite legislation.
This matter is remanded for trial on all three counts against Defendant.
SMITH, JOHNSON and ALEXANDER, JJ., concur.
DURHAM, Chief Justice, concurring.
I agree with the majority that the State has made a prima facie case on each of the crimes with which Chief Groom is charged, and that the Court of Appeals correctly remanded all charges for trial. I disagree, however, that RCW 10.79.045 criminalizes any constitutionally impermissible search, regardless of a police officer's best effort to conform to the law. The result is that RCW 10.79.045 becomes a strict liability crime. This step should be taken only if the Legislature intended to eliminate any mens rea; the majority fails to offer any indication of such intent. Moreover, it is apparent that the 1921 Legislature, by enacting RCW 10.79.045, intended to criminalize only a police officer's knowingly unlawful search. I would construe RCW 10.79.045 to require that a police officer knowingly perform an unlawful search before incurring criminal liability.
In determining whether the Legislature has intended to create a strict liability crime, we look to the Supreme Court for guidance.[1] In Staples v. United States, 511 U.S. 600, 618, 114 S.Ct. 1793, 1804, 128 L.Ed.2d 608 (1994), the Supreme Court reversed the defendant's conviction for possession of an unregistered machine gun. Even though the National Firearms Act, 26 U.S.C. § 5861(d), did not contain a knowledge requirement, the Court held that the government had to prove that the defendant knew his rifle had the characteristics that would bring it within the statute's definition of machine gun before the government could obtain a conviction.[2] The Court observed, "`[t]he existence of a mens rea is the rule of, rather than the exception to, the principles of Anglo-American criminal jurisprudence.'"[3] The Court concluded that *249 a statute's silence regarding a mental element, therefore, is not dispositive.[4] Rather, there must be some indication that the Legislature intended to dispense with the mens rea requirement before a statute may be construed to define a strict liability crime.[5] There are no comprehensive criteria; each case depends on a commonsense determination of whether the Legislature intended to eliminate the mens rea requirement.[6] The majority's construction of RCW 10.79.045 fails this standard.
It is apparent that the Legislature intended to criminalize only a police officer's knowingly unlawful search. RCW 10.79.040, as enacted in 1921, contained an inherent mental element by requiring that a police officer obtain a warrant as a necessary prerequisite to the lawful search of any home: "It shall be unlawful for any policeman or other peace officer to enter and search any private dwelling house or place of residence without the authority of a search warrant issued upon a complaint as by law provided." It was unnecessary for the 1921 Legislature to explicitly codify a mental element because a police officer would certainly know whether he or she had obtained a warrant prior to entry. Therefore, RCW 10.79.045, which makes it a gross misdemeanor for a police officer to violate RCW 10.79.040, would have criminalized only a police officer's knowingly unlawful search.
Despite the plain language of the statute, however, this court has construed RCW 10.79.040 to allow constitutionally permissible warrantless searches.[7] Consequently, the unlawfulness of a search no longer simply turned on whether or not a police officer had obtained a warrant prior to the search. Instead, the unlawfulness of a search now turns on the legal question of whether the search was permissible in the context of our constantly evolving search and seizure jurisprudence. Yet, none of the cases construing RCW 10.79.040 to allow constitutionally permissible warrantless searches involved criminal liability under RCW 10.79.045. Rather, these cases were decided in the context of the exclusionary rule. Thus, we removed the mental element inherent in RCW 10.79.040 without considering the effect this would have on the potential criminalization of an unlawful search under RCW 10.79.045.
Since the present case is the first published case of prosecution under RCW 10.79.045, the Legislature likewise has had no reason to consider the implications of our construction of RCW 10.79.040 in the context of criminal liability under RCW 10.79.045. Thus, the majority's suggestion that the Legislature could have expressly protected good faith conduct is not persuasive. We are dealing with a statute that everyone concedes has been overlooked by both the courts and the Legislature for over 70 years. In this light, the Legislature's decision to protect good faith police conduct in other settings takes on a different significance.[8] Because the 1921 Legislature had no way of anticipating that we would remove the unambiguous warrant requirement and the Legislature since then has protected officers' good faith conduct from criminal liability, we cannot say that the Legislature intended to create a strict liability crime with RCW 10.79.045. Therefore, it is appropriate to construe RCW 10.79.045 to require that a police officer knowingly perform an unlawful search before incurring criminal liability.
The majority's decision not only ignores the standard for imposing strict liability and defeats legislative intent, but also results in *250 substantial harm to the public; the threat of criminal liability attaching to innocent conduct may undermine police officers' willingness to exercise decisively the discretion that is required of them. To this day, attorneys, legal scholars, and the courts disagree on the scope of constitutionally permissible warrantless searches. Yet, under the majority's construction of RCW 10.79.045, a police officer is expected to know at any moment the exact contours of search and seizure jurisprudence in order to avoid criminal liability.
Our primary duty in interpreting statutes is to carry out the intent of the Legislature.[9] There is nothing to suggest that the 1921 Legislature, or any Legislature since then, intended to criminalize anything other than a police officer's knowingly unlawful search. Indeed, everything points to the contrary. Since there is no deterrent effect in penalizing innocent conduct, the only consequence of the majority's holding is the substantial public harm of forcing our police officers to weigh the risk of criminal liability against their command of search and seizure jurisprudence when deciding whether to perform a warrantless search.
I would construe RCW 10.79.045 to criminalize only a police officer's knowingly unlawful search.
GUY, TALMADGE and DOLLIVER, JJ., concur.
SANDERS, Justice, concurring.
Were it the intent of the Legislature to simply prohibit warrantless searches I cannot imagine a clearer manifestation of that intent than RCW 10.79.040 which simply provides:
It shall be unlawful for any policeman or other peace officer to enter and search any private dwelling house or place of residence without the authority of a search warrant issued upon a complaint as by law provided.
Although correct in ultimate disposition, and specifically correct in its rejection of a good faith defense, both the majority and Chief Justice Durham's concurrence go to great lengths in dicta to pay lip service to the proposition that this statute does not simply prohibit all warrantless searches but rather only those warrantless searches which are also inconsonant with Constitution article I, section 7.
The plain words of the statute set forth the elements of this crime: to convict, the defendant must (1) be a policeman or peace officer who (2) conducts a warrantless residential search. It is settled the "legislature's definition of the elements of the offense is usually dispositive...." McMillan v. Pennsylvania, 477 U.S. 79, 85, 106 S.Ct. 2411, 2415, 91 L.Ed.2d 67 (1986). There is simply no third element to the crime which also requires the prosecution to prove that the warrantless residential search was also unconstitutional. When the Legislature declines to include a particular element in a statutory crime, the court must accept that determination. State v. Martell, 22 Wash. App. 415, 418-19, 591 P.2d 789 (1979) ("[W]e deem it a legislative function to define the elements of a particular crime. It would be a distortion of the judicial function for us, in the guise of statutory construction, to change a clearly expressed disjunctive element of the crime and declare it to be a conjunctive element. Courts may not modify a statute by construction.") (citing Anderson v. City of Seattle, 78 Wash.2d 201, 471 P.2d 87 (1970)). Indeed, as the majority correctly observes,
[H]owever much members of this court may think that a statute should be rewritten, it is imperative that we not rewrite statutes to express what we think the law should be. We simply have no such authority.
Majority at 246 (citations omitted).
This court must consider the meaning and application of RCW 10.79.040 as a case of first impression as no previous reported authority deals with a criminal prosecution arising under it. Several cases have mentioned the statute in passing, however, only in the context of a motion to suppress evidence in a collateral proceeding. Even then the statute makes little more than a cameo appearance marked by a paucity of discussion. The majority's conclusion that "criminal liability *251 does not arise under RCW 10.79.045 when a police officer conducts a constitutionally valid warrantless search" (Majority at 245) is not only inconsistent with the clear text of the statute but lacks precedential support.
The majority identifies two prior cases from this court to support the proposition that that statute does not mean what it says: State v. Thomas, 183 Wash. 643, 646, 49 P.2d 28 (1935) and State v. Smith, 50 Wash.2d 408, 314 P.2d 1024 (1957). Thomas involved the appeal of a robbery conviction wherein the accused assigned error to the introduction into evidence of a pair of socks seized coincident to a lawful arrest but without a search warrant. The court, almost in passing, stated, "The statute, of course, has no application to a search made as incident to a lawful arrest." Thomas, 183 Wash. at 646, 49 P.2d 28. On its face Thomas involved a motion to suppress evidence utilized in a collateral proceeding against a third person, not a criminal prosecution under the subject statute. Thus Thomas involved the situation where the officer was on the premises pursuant to independent lawful authority neither search related nor dependent. The officer's presence in the residence at issue here, however, was not incident to a lawful arrest but was motivated solely to gather evidence against the accused.
Smith was also an exclusion of evidence case, not a criminal proceeding which arose under this statute. Smith says nothing about the statute other than simply citing it, but rather proceeds to determine the admissibility of the evidence under a federal constitutional analysis which otherwise limits the exclusionary rule to situations not involving consent or waiver.
The majority also cites three Court of Appeals decisions, none of which are binding on this court in any event: State v. Campbell, 15 Wash.App. 98, 547 P.2d 295 (1976); State v. Sanders, 8 Wash.App. 306, 506 P.2d 892 (1973); and State v. Duarte, 4 Wash.App. 825, 484 P.2d 1156, review denied, 79 Wash.2d 1006 (1971). Campbell cited the statute but contained no analysis of its application even in the context of a motion to suppress evidence constitutionally seized under the exigent emergency exception to the warrant rule. Sanders was also a suppression of evidence case which contained no discussion of RCW 10.79.040 other than stating,
Because the statute, RCW 10.79.040, implements article I, section 7, and because the constitutional right secured by article I, section 7 is the same constitutional right secured by the Fourth Amendment, we will discuss the validity of the search in terms of the Fourth Amendment.
Sanders, 8 Wash.App. at 309, 506 P.2d 892 (citations omitted). Nor does Duarte shed any new light on the subject as it is a suppression case, not a proceeding under the statute per se, which simply purports to summarily follow Smith.
In sum, none of the cases identified by the majority provides precedent, much less reason, to support the majority's dicta that this statute does not mean exactly what it says nor do I find any reason articulated by the majority other than its appeal to inapposite authority to support the proposition that "criminal liability does not arise under RCW 10.79.045 when a police officer conducts a constitutionally valid warrantless search." Majority at 245. Such claim defeats the clear language of the statute and robs the Legislature of its authority to rise above the irreducible constitutional minimum guarantee of civil liberties embodied in the Declaration of Rights, Const. art. I, and defeats the express grant of legislative authority whereby government is "established to protect and maintain individual rights." Const. art. I, § 1. Indeed, what is "manifest" (Majority at 245) is that our Declaration of Rights provides a floor beneath which our civil liberties may not sink, not a ceiling above which they may not rise.
Moreover the majority's dicta that this statute does not mean what it says adds backhanded support to defendant's claim that it is therefore unconstitutionally vague. The majority's response that "a sufficiently specific prior judicial construction of a statute can save a statute from unconstitutional vagueness" (Majority at 247) seems curiously out of place when presented with a statute that is clear enough on its face but is rendered vague by the majority's evident predisposition that it should not be enforced as *252 written. Were this the holding of the case, rather than obiter dicta, I would be most inclined to agree with the defendant that, from the standpoint of the accused, if the statute does not mean what it clearly says, who knows what it does mean.
NOTES
[1] The statement of facts is derived from Defendant's factual allegations and the facts alleged in the State's affidavit in response to the Knapstad motion for dismissal.
[2] Officer Mandoli was subsequently exonerated.
[3] If the Legislature had intended to include a good or bad faith component in RCW 10.79.045, it would have done so, as it has done in numerous other statutes. See, e.g., RCW 9A.16.040(3); RCW 10.31.100(12); RCW 13.32A.070(1); RCW 16.52.210; RCW 26.09.300(6); RCW 26.10.220; RCW 26.26.138(6); RCW 26.50.140; RCW 71.05.120(1).
[4] On several occasions the court has declined to consider whether under Constitution article I, section 7 there should be a "good faith" exception to the exclusionary rule. State v. Werner, 129 Wash.2d 485, 496, 918 P.2d 916 (1996); State v. Riley, 121 Wash.2d 22, 30, 846 P.2d 1365 (1993); State v. Canady, 116 Wash.2d 853, 857-58, 809 P.2d 203 (1991).
[1] See State v. Bash, 130 Wash.2d 594, 605-06, 925 P.2d 978 (1996) (citing Staples v. United States, 511 U.S. 600, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994)).
[2] Staples, 511 U.S. at 604, 114 S.Ct. at 1796.
[3] Staples, 511 U.S. at 605, 114 S.Ct. at 1797 (quoting United States v. United States Gypsum Co., 438 U.S. 422, 436-37, 98 S.Ct. 2864, 2873, 57 L.Ed.2d 854 (1978)).
[4] Staples, 511 U.S. at 605, 114 S.Ct. at 1797.
[5] See id.
[6] Staples, 511 U.S. at 619-20, 114 S.Ct. at 1804-05.
[7] See, e.g., State v. Thomas, 183 Wash. 643, 646, 49 P.2d 28 (1935); State v. McCollum, 17 Wash.2d 85, 88, 136 P.2d 165 (1943), overruled on other grounds by State v. Ringer, 100 Wash.2d 686, 699, 674 P.2d 1240 (1983); State v. Smith, 50 Wash.2d 408, 411, 314 P.2d 1024 (1957). See also, e.g., City of Snohomish v. Swoboda, 1 Wash. App. 292, 296-97, 461 P.2d 546 (1969); State v. Duarte, 4 Wash.App. 825, 833, 484 P.2d 1156 (1971); State v. Sanders, 8 Wash.App. 306, 310-12, 506 P.2d 892 (1973); State v. Campbell, 15 Wash.App. 98, 100, 547 P.2d 295 (1976).
[8] See, e.g., RCW 9A.16.040(3) (no criminal liability for police officer using deadly force in good faith without malice); RCW 10.31.100(12) (no criminal liability for police officer making arrest in good faith without malice).
[9] State v. Rivas, 126 Wash.2d 443, 451, 896 P.2d 57 (1995).