[No. 24555-8-II. Division Two. December 10, 1999.]

THE STATE OF WASHINGTON, *Respondent*, v. WILLIAM R. HENDRICKSON, *Appellant*.

*Michael Edward McNeff,* for appellant.

*Jeremy Randolph, Prosecuting Attorney,* and *J. Andrew Toynbee, Deputy,* for respondent.

*Christine O. Gregoire, Attorney General,* and *Carol Smith-Merkulov, Assistant,* on behalf of Washington State Patrol, amicus curiae.

MORGAN, J. — William R. Hendrickson appeals from an order denying him leave to withdraw his plea of guilty to a charge of unlawful imprisonment. We affirm.

Until 1992, Hendrickson was on active status as a trooper of the Washington State Patrol. On January 26, 1993, effective October 19, 1992, he was "relieve[d] from active duty" and placed on "disability status."[1] He continued on disability status at all times material to this case.

Three years later, in 1996, Hendrickson was residing in rural Lewis County. His property fronted on a public road that dead-ended a short distance away. The driveway connecting his house to the public road was more than 100 yards long.

On June 20, 1996, Hendrickson was sitting on his back porch when he heard what he thought were shots being fired from a .22 caliber gun. He also heard a car "roar

---

[1]*See* RCW 43.43.040.

down" the public road, headed for where the road dead-ends.[2] He knew "that whoever had driven down the road had to come back out because of the dead end," so he "grabbed his flashlight and a pistol," got in his private car, and drove down to the public road.[3]

When he reached the public road, he saw that his mailbox had been smashed. About the same time, as he later explained to the trial court,

> [T]here was a vehicle, I could see headlights coming [apparently from the direction in which the public road dead-ends]. This was approximately 12:30 at night. Due to the fact there is [sic] exceptionally few vehicles on the road that time of night, I figured this had to be the vehicle that had just messed up the mailbox and come out. I flashed my headlights and stopped the vehicle and flashed my headlights at the person behind the wheel of the pickup.[4]

When the other vehicle stopped,[5] Hendrickson ordered the driver to get out. The driver refused, so Hendrickson responded, according to his own later statement, by "pointing a pistol at the gentleman and ask[ing] him to exit his vehicle."[6] As soon as the man complied, Hendrickson "patted [him] down and began searching his vehicle to see if there were any weapons such as a .22 caliber rifle or a baseball bat or club."[7] Finding nothing, Hendrickson apologized and identified himself—for the first time—as a person with connections to the Washington State Patrol. Hendrickson then released the man and continued his search for other suspects.

---

[2]Br. of Appellant at 1.

[3]Br. of Appellant at 2.

[4]Report of Proceedings at 6-7.

[5]The other vehicle had to stop, according to its driver's later statement, because Hendrickson blocked the road with his car.

[6]Report of Proceedings at 7. When later asked if he was knowingly restraining the other man at this time, Hendrickson replied in part, "I guess the pistol restrained him." Report of Proceedings at 7.

[7]Br. of Appellant at 2.

The other driver turned out to be an ordinary citizen returning from his job in the woods. He complained to the authorities, and Hendrickson was charged with second degree assault with a deadly weapon.

On November 14, 1996, following extensive plea negotiations, Hendrickson pleaded guilty to a reduced charge of unlawful imprisonment in violation of RCW 9A.40.040.[8] He was sentenced to 30 days of home detention, 240 hours of community service, and 24 months of community supervision.

On July 24, 1997, Hendrickson moved to withdraw his guilty plea. On February 17, 1998, after intervening proceedings not pertinent here, the trial court denied the motion.[9] Hendrickson then filed this appeal.

Hendrickson now argues that he was acting as a police officer at the time of the charged event; that as a police officer, he had the right to use force in the manner that he did; and that he did not understand his right to use force before he pleaded guilty. As a result, he concludes, he did not make a knowing, voluntary and intelligent decision to plead guilty,[10] and his plea of guilty should be set aside.

The State responds that Hendrickson was a private citizen, not a police officer, and that he had no right to use force in the way that he did. It concludes that he had all

---

[8]RCW 9A.40.040 provides:

(1) A person is guilty of unlawful imprisonment if he knowingly restrains another person.

(2) Unlawful imprisonment is a class C felony.

[9]The trial court initially granted the motion, based on Division Three's decision in *State v. Groom*, 80 Wn. App. 717, 911 P.2d 403 (1996). The State moved for reconsideration, and the motion was held in abeyance pending the Supreme Court's review of *Groom*. On November 20, 1997, the Supreme Court reversed Division Three's decision in *Groom*.

[10]A police officer's right to use force is generally described in RCW 9A.16.020(1) and (2), and also in RCW 9A.16.040. Hendrickson fails to cite or discuss either statute. Instead, he focuses his efforts on asking us *not* to rely on *State v. Groom*, 133 Wn.2d 679, 947 P.2d 240 (1997). We accede to his request, although not for the reasons he asserts. *Groom* contains two plurality opinions. Each is signed by four justices, and neither is consistent with the other. As a result, we are unable to discern how, if at all, *Groom* might affect this case.

the information he needed in order to make a knowing, voluntary and intelligent decision to plead guilty, and that his plea cannot be disturbed.

The first question is whether Hendrickson was exercising lawful force because he was entitled to act, and was acting, as a police officer.[11] The answer is no.

Washington law distinguishes between the trooper on active status and the trooper on disability status.

> The chief of the Washington state patrol shall relieve from active duty Washington state patrol officers who, while in the performance of their official duties, or while on standby or available for duty, have been or hereafter may be injured or incapacitated to such an extent as to be mentally or physically incapable of active service[.][12]

If an officer becomes physically disabled while performing line duty, the chief places him or her on "disability leave" for the first six months; after that, "the chief shall either place the officer on *disability status* or return the officer to *active status*."[13]

Washington law empowers troopers on active status to perform law enforcement duties. The Washington Administrative Code (WAC) uses "active service,"[14] "active duty,"[15] "active status,"[16] and "active service status"[17] as equivalent terms, and WAC 446-40-020(1) defines "active service" to mean "all performance of duties of whatever type,

---

[11]Hendrickson argues that a police officer in the same situation would have had the authority to stop and briefly detain the victim by virtue of *Terry v. Ohio*, 321 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). For convenience, and without so holding, we assume that is true.

[12]RCW 43.43.040(1).

[13]RCW 43.43.040(1)(a) (emphasis added); *see also* RCW 43.43.040(2) and RCW 43.43.290. The last distinguishes "disablement" from "active status" for purposes of the Washington State Patrol's regular retirement plan.

[14]*See also* WAC 446-40-040(3); WAC 446-40-070(3).

[15]WAC 446-40-070(4), (6).

[16]WAC 446-40-040(3).

[17]WAC 446-40-040(3); WAC 446-40-050.

performed pursuant to orders by a superior of the member, provided, such duties shall be consistent with the responsibilities of the Washington state patrol." So long as a trooper is on active status, it generally does not matter whether he is on or off duty.[18]

█ Washington law does not empower the trooper on disability status to perform law enforcement duties.[19] As already seen, "[t]he chief of the Washington state patrol shall *relieve from active duty* Washington state patrol officers who . . . may be injured or incapacitated to such an extent as to be mentally or physically incapable of active service[.]"[20] "Active service" includes the performance of all "duties of whatever type."[21] It follows that when the chief relieves a trooper from active duty, the chief is recognizing that the trooper is not capable of performing law enforcement duties, and the chief is removing the trooper's authority to perform such duties pending the trooper's return to active service.

Attempting to refute this conclusion, Hendrickson relies on RCW 43.43.050. It provides that "Washington state patrol officers shall be entitled to retain their ranks and positions until death or resignation, or until suspended, demoted, or discharged in the manner hereinafter provided." It is our view, however, that RCW 43.43.050 merely prevents the State Patrol from demoting or terminating a disabled trooper; it does not mean that a trooper may perform law enforcement duties while incapable of doing

---

[18]*See State v. Brown*, 36 Wn. App. 166, 672 P.2d 1268 (1983).

[19]The Washington State Patrol agrees with this reading of the law. It states in its amicus brief: "A commissioned member of the Washington State Patrol while on 'disability status' pursuant to the provisions of RCW 43.43.040 does not have the authority to take law enforcement action." Amicus Br. at 1.

[20]RCW 43.43.040(1) (emphasis added).

[21]WAC 446-40-020(1). WAC 446-40-020(4) consistently defines the term "disability" to mean "any injury or incapacitation of such an extent as to render a member of the Washington state patrol mentally or physically incapable of active service." WAC 446-40-030 through 446-40-070 consistently state or imply that a trooper receives disability status because he or she is not "mentally or physically capable of continuing in active service." WAC 446-40-070(3).

so, or, in alternative terms, that a trooper may perform law enforcement duties while disabled. Thus, it does not aid Hendrickson here.

Hendrickson also argues that when the State Patrol moved him from active status to disabled status, it failed to make clear to him that he could not act as a police officer until his return to active status. Assuming that is true, it is also immaterial. The authority of a disabled trooper is controlled by the law discussed above, not by the actions of a particular State Patrol supervisor. Because Hendrickson was on disability status at the time of the incident charged herein, he did not have lawful authority to act as a police officer.

█ Having concluded that Hendrickson was not exercising lawful authority as a police officer, we turn to whether he was exercising lawful authority as a private citizen. "[A] private [citizen] may arrest for a misdemeanor only if it constitutes a breach of the peace and is committed in his presence."[22] The facts here show no more than a misdemeanor committed outside Hendrickson's presence. When Hendrickson accosted the victim at gunpoint, he was not exercising lawful authority as a private citizen.

Because Hendrickson was not exercising lawful authority as either a police officer or a private citizen, the record of his plea adequately discloses that he understood the elements of the charge to which he pleaded guilty. He was not entitled to withdraw his plea, and the trial court did not err by so ruling.

Affirmed.

BRIDGEWATER, C.J., and HOUGHTON, J., concur.

Review denied at 140 Wn.2d 1024 (2000).

---

[22]*State v. Gonzales*, 24 Wn. App. 437, 439, 604 P.2d 168 (1979), *review denied*, 93 Wn.2d 1028 (1980); *see also State v. Malone*, 106 Wn.2d 607, 610, 724 P.2d 364 (1986). *State v. Bonds*, 98 Wn.2d 1, 9, 653 P.2d 1024 (1982), *cert. denied*, 464 U.S. 831 (1983), states a similar but not identical rule for police officers.