FILED
COURT OF APPEALS
DIVISION II

2014 MAR 11 AM 8:38

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| DOUGLAS MERINO and KAY MERINO, husband and wife, and the marital community composed thereof,<br><br>Appellants,<br><br>v.<br><br>THE STATE OF WASHINGTON and ITS AGENCIES; THE WASHINGTON STATE DEPARTMENT OF RETIREMENT SYSTEMS; THE WASHINGTON STATE PATROL and JOHN R. BATISTE, Chief Thereof, and DAVID J. KARNITZ, Deputy Chief Thereof,<br><br>Respondents. | No. 43865-8-II<br><br><br><br>PUBLISHED OPINION |

HUNT, J. — Douglas and Kay Merino[1] appeal the superior court's denial of their motion for summary judgment and granting of the State's motion for summary judgment in their action for disability benefits against the Washington State Patrol (WSP). Merino argues that Washington law entitles him to disability compensation as long as he remains disabled from injuries incurred in the line of duty, even after WSP terminated his employment as a trooper for violating WSP regulations. Holding that under RCW 43.43.040, Merino's disability benefits

---

[1] Although both Douglas Merino and his wife, Kay Merino, filed suit and appeal the superior court's rulings, the issues relate solely from Douglas Merino's employment.

vested when he became disabled in the line of duty and that he is entitled to continuing disability payments, we reverse the superior court's summary judgment rulings and remand for entry of summary judgment in favor of Merino, reinstatement of his disability benefits, and calculation of attorney fees to which he is entitled under RCW 49.48.030.

FACTS

I. BACKGROUND

A. WSP Disability Status

The parties agree on the facts. Douglas Merino joined the WSP in 1978 and served as a fully commissioned trooper until October 11, 1988, when he suffered a herniated disc and injuries to his left neck and left shoulder after being ejected from a patrol vehicle while on duty. As a result of these injuries, Merino was unable to meet the physical requirements for his WSP trooper position and went without pay from 1989 through 1991. On February 10, 1994, then-Chief Roger Bruett placed Merino on full job-related disability status, for which he received monthly payments equal to one-half of his previous active-status monthly salary.[2] Sometime thereafter, Merino found employment as an investigator with the Department of Labor and Industries (L&I).

---

[2] The WSP's disability system is divided into (1) active status, for WSP employees who perform duties for the WSP; and (2) inactive status, for WSP employees "who, while in the performance of their official duties . . . have been . . . injured or incapacitated to such an extent as to be mentally or physically incapable of active service." RCW 43.43.040(1); see WAC 446-40-020. A WSP employee placed on disability status under RCW 43.43.040 continues as a WSP employee, but on inactive status; such employee receives monthly payments equal to one-half of his active status monthly salary. RCW 43.43.040(2)(a). Merino was on inactive status from February 1994 until his WSP termination in August 2008.

On November 1, 1999, more than five years after becoming disabled, Merino received a certified letter that the WSP sent to all troopers on disability status at that time. This letter (1) confirmed that Merino was an "employee on inactive status due to a disability," (2) informed him that he must continue to comply with WSP regulations and policies, (3) required him to sign and to return the letter, and (4) threatened potential loss of his disability payments if he did not do so. Clerk's Papers (CP) at 212. Merino promptly signed and returned the letter.

### B. Insurance Fraud; WSP Termination

In 2005 and 2006, while still on WSP disability status, Merino became involved in an insurance fraud scheme: He attempted to defraud Farmers Insurance of $60,000 and lied to insurance investigators questioning this claim. On January 28, 2008, a jury convicted Merino of two felony counts of fraud based on this false insurance claim. Three days later, WSP received a letter from Merino asking to retire. On February 1, WSP advised Merino that he was not eligible to retire because he had not yet applied for active duty status.

Merino's fraud involvement prompted WSP to investigate whether he had violated WSP regulations, and it charged him with several grounds for discipline. On June 2, 2008, WSP Chief John Batiste conducted a predetermination hearing to give Merino an opportunity to respond to WSP's administrative disciplinary charges; Merino's attorney was present, but Merino was not. On August 6, Chief Batiste found that Merino had violated WSP regulations and terminated him from WSP for violating WSP Rules of Conduct Regulation 8.00.010. As a result of Merino's employment termination, WSP terminated his disability payments.[3]

---

[3] On November 24, 2009, Merino withdrew all remaining funds from his WSP retirement account.

## II. PROCEDURE

Merino did not appeal Chief Batiste's decision.[4] On January 31, 2011, Merino sued the State of Washington, the Washington State Department of Retirement Systems, WSP, Chief Batiste, and WSP Deputy Chief David Karnitz.[5] Merino and the defendants filed cross-motions for summary judgment under CR 56. Merino argued that WSP had wrongfully terminated his disability payments because he remained disabled from injuries in the line of duty. The defendants sought dismissal of all of Merino's claims.

The superior court denied Merino's summary judgment motion and granted summary judgment to WSP, ruling that RCW 43.43.040 entitled Merino to

> a disability benefit so long as he was an officer of [the] WSP and not fit to return to active duty. The fact that he committed a fraud and that fact that he was convicted of a crime did not affect his right to continued receipt of the disability payment; but when he was terminated from the WSP the right to the payment also terminated because he was no longer an officer.

CP at 308. Merino appeals.[6]

## ANALYSIS

Merino argues that (1) his WSP disability benefits vested when he was hired as a state patrol officer in 1978; (2) Washington law requires payment of disability benefits as long as his disability exists and does not allow termination of these vested benefits, regardless of whether he was terminated from WSP for committing a felony; and (3) under Wash. Const. art. I, § 15, his

---

[4] *See* RCW 43.43.100.

[5] At the time of this lawsuit, Merino was no longer employed by L&I.

[6] Merino appeals only the superior court's grant of summary judgment to WSP. Thus, this appeal addresses only WSP's liability, not the other defendants' liability.

4

disability compensation qualifies as an "estate," which cannot be forfeited based on a felony conviction. WSP counters that the superior court ruled properly on summary judgment because (1) Merino's disability payments were compensation paid by his employer and, thus, were not vested benefits; and (2) the disability compensation that Merino received was specifically provided only to WSP officers, for which Merino no longer qualified when he was terminated from WSP.

Merino's first argument fails: His disability benefits did not vest when he was hired as a WSP trooper; rather, he was entitled to such benefits only if and when he became disabled in the line of duty, the point at which these benefits vested. *See* RCW 43.43.040(1); *see also State ex rel. Johnson v. Funkhouser*, 52 Wn.2d 370, 373, 325 P.2d 297 (1958). We agree with Merino's second argument; and, therefore, we do not reach his third, constitutional argument. We hold that the legislature enacted RCW 43.43.040 to provide disability benefits to WSP officers that vested upon injury in the line of duty; Merino's WSP disability benefits vested when he was injured in the line of duty; and, therefore, they are a vested statutory benefit that continues as long as he remains disabled, including after his termination from WSP.

## I. STANDARDS OF REVIEW

We review a summary judgment ruling de novo, "engaging in the same inquiry as the trial court." *Navlet v. Port of Seattle*, 164 Wn.2d 818, 827, 194 P.3d 221 (2008) (citing *City of Sequim v. Malkasian*, 157 Wn.2d 251, 261, 138 P.3d 943 (2006)). Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." CR 56(c). The parties here agree that there are no factual disputes and that we may resolve the issues as a matter of law. We review such questions

of law de novo. *Andersen v. King County*, 158 Wn.2d 1, 13, 138 P.3d 963 (2006); *Hanson Ind., Inc. v. Kutschkau*, 158 Wn. App. 278, 286-87, 239 P.3d 367 (2010), *review denied*, 171 Wn.2d 1011 (2011).

The primary issue here is whether Merino was entitled to disability benefits under RCW 43.43.040 while his disability, incurred in the line of duty, persisted after his termination as a WSP employee. We look to the plain language of a statute to discern legislative intent. *Wright v. Dep't of Soc. & Health Servs.*, 176 Wn. App. 585, 594, 309 P.3d 662 (2013) (citing *Lacey Nursing Ctr., Inc. v. Dep't of Revenue*, 128 Wn.2d 40, 53, 905 P.2d 338 (1995)).

## II. RCW 43.43.040: WSP Disability Benefits

RCW 43.43.040 provides, in pertinent part,

(1) The chief of the Washington state patrol shall relieve from active duty Washington state patrol officers who, while in the performance of their official duties . . . have been . . . injured or incapacitated to such an extent as to be mentally or physically incapable of active service: PROVIDED, That:
    (a) Any officer disabled while performing line duty who is found by the chief to be physically incapacitated shall be placed on disability leave for a period not to exceed six months . . . . Prior to the end of the six-month period, the chief shall either place the officer on disability status or return the officer to active status.

        . . . .

    (c) An officer *injured while engaged in willfully tortious or criminal conduct* shall not be entitled to disability benefits under this section;

        . . . .

    (2)(a) Officers on disability status shall receive one-half of their compensation at the existing wage, *during the time the disability continues in effect*, less any compensation received through the department of labor and industries.

(Emphasis added.)[7] Merino contends that his WSP disability payments were vested benefits under this statute and, therefore, the WSP cannot terminate them as long as he is disabled, regardless of whether he committed a felony or violated WSP regulations after becoming disabled. We agree with Merino.

WSP counters that (1) because RCW 43.43.040's compensation scheme is separate from the "Washington Law Enforcement Officers' and Firefighters' Retirement System Act" (LEOFF), ch. 41.26 RCW (which covers most Washington law enforcement personnel), WSP is not subject to the rules that ordinarily govern disability compensation[8]; (2) Merino's disability payments could not be vested compensation because they were fundamentally "wages," functioning as deferred compensation for services he already rendered, not a pension[9]; and (3) because LEOFF disability benefits apply to former officers and former employees (individuals

---

[7] Most public law enforcement employees and firefighters receive disability and retirement benefits under the "Washington Law Enforcement Officers' and Firefighters' Retirement System Act" (LEOFF), ch. 41.26 RCW. But WSP employees receive disability benefits under RCW 43.43.040, not LEOFF; under LEOFF, RCW 41.26.120 specifically provides disability benefits as part of a disabled employee's retirement compensation. RCW 41.26.120(4).

[8] More specifically, WSP argues that according to *Callecod v. Washington State Patrol*, 84 Wn. App. 663, 672, 929 P.2d 510, *review denied*, 132 Wn.2d 1004 (1997), WSP's disability retirement system is fundamentally incomparable with LEOFF and, therefore, we cannot compare vested LEOFF benefits to WSP benefits in RCW 43.43.040. We disagree. We read *Callecod* to stand for the much narrower proposition that only the disability benefits eligibility standards for LEOFF and WSP are not comparable because ch. 43.43 RCW and ch. 41.26 RCW have different procedures to qualify for disability benefits. In *Callecod*, Division One of this court addressed only the disability requirements under the two disability systems; it did not consider whether RCW 43.43.040 disability payments are vested benefits for WSP officers placed on disability status. *See* 84 Wn. App. at 672. Thus, *Callecod* is not dispositive here.

[9] At the outset we note that neither the method by which the WSP paid disability benefits to Merino, nor the source or classification of these funds, is dispositive on the issue of whether RCW 43.43.040 creates a vested disability benefit.

7

whose employment relationship has ended), RCW 43.43.040 applies only to currently employed WSP officers. We disagree with WSP.

A. Vesting

The legislature's purpose for these disability payments is to provide income to a WSP officer who can no longer perform line duty by virtue of injuries suffered while protecting the public. RCW 43.43.040(1). Merino was injured while engaged in line duty as a WSP officer and, as a result, was placed on disability status under RCW 43.43.040. He qualified for disability benefits under this statute, which provides that "[o]fficers on disability status shall receive one-half of their compensation at the existing wage, *during the time the disability continues in effect*." RCW 43.43.040(2)(a) (emphasis added).

Once an officer is assigned disability status, he or she retains only the title "officer" and the right to be considered to a return to active service; the officer no longer has the law enforcement power of a state trooper on active status.[10] *State v. Hendrickson*, 98 Wn. App. 238, 242-43, 989 P.2d 1210 (1999), *review denied*, 140 Wn.2d 1024 (2000). Because the disability prevents the officer from earning a regular income working full-time for the WSP, the monthly "half-wage" disability payments help offset the officer's diminished earning capacity and partially compensates the officer for his or her sacrifices in the line of duty. *See* RCW 43.43.040(1).

---

[10] But a disabled officer may seek employment elsewhere, as Merino did.

In striking contrast with the legislature's explicitly narrow disqualification of disability benefits if the trooper receives injuries while engaged in a tort or a crime,[11] ch. 43.43 RCW contains no analogous language requiring a disabled recipient to continue WSP employment in order to receive such disability benefits.[12] On the contrary, the plain language of RCW 43.43.040 shows that the legislature drafted this statute to compensate WSP officers for injuries sustained in the line of duty (to compensate them partially for employment-generated wages that these disabilities have taken from them, not to compensate them for continued employment); thus, the legislature conditioned this statutory disability benefit *only* on the officer's becoming injured "in the line of duty."

Washington courts have adopted a similar approach with other statutory disability and disability-related pension benefits, holding that such disability payments vest at the time of

---

[11] RCW 43.43.040(1)(c).

[12] WSP contends that trooper disability benefits under RCW 43.43.040 are not "vested" because the statute requires the condition precedent of becoming disabled to meet two contingencies—that the disability continues *and* that the disabled trooper remains a WSP officer. But WSP cites no authority for its proposition that Merino's *termination* as a WSP officer either retroactively divested him of existing disability benefits or somehow prevented their vesting at all. Accordingly, we do not further consider this argument. RAP 10.3(a)(6); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

injury. *See Newlun v. Dep't of Ret. Sys.*, 53 Wn. App. 809, 821-22, 770 P.2d 1071[13] (quoting *Johnson*, 52 Wn.2d at 372-73), *review denied*, 113 Wn.2d 1014 (1989).

In *Newlun*, Division Three of our court favorably cited a Delaware court's holding that the primary purpose of a disability pension statute is to compensate injured police officers for permanent disabilities received in the course of their official duties, including that "'[t]he right to a pension [depends] on fulfillment of the statutory requirements for eligibility.'" 53 Wn. App. at 823 (quoting *Miller v. City of Wilmington*, 285 A.2d 443, 445-46 (Del. Ch. 1971), *aff'd*, 293 A.2d 574 (Del. 1972)).

*Newlun* also emphasized the importance of "'consider[ing] the liberal rules of construction . . . in construing pension statutes. Because of the remedial purpose of such statutes . . . a forfeiture or waiver of [disability] pension rights should be found only where clearly intended by the parties.'" *Newlun*, 53 Wn. App. at 823 (3rd alteration in original) (quoting *Miller*, 285 A.2d at 445-46). And our Washington legislature has expressly intended a forfeiture or waiver of disability benefits only when an officer becomes disabled "while engaged in

---

[13] The Washington Department of Retirement Systems and City of Spokane refused to pay a disability pension to former law enforcement officer Newlun, whom the police department had placed on disability status as a result of his drug addiction caused by cocaine use during an undercover police investigation. *Newlun*, 53 Wn. App. at 811, 813. When Newlun attempted to return to active service, the police department refused to employ him. *Newlun*, 53 Wn. App. at 814. He subsequently resigned from the police force and applied for a disability pension. *Newlun*, 53 Wn. App. at 814-15. Interpreting LEOFF (ch. 41.26 RCW), Division Three of our court held that Newlun's resignation from the police force did not disqualify him from seeking disability benefits. *Newlun*, 53 Wn. App. at 824.

willfully tortious or criminal conduct."[14] This sole narrow disqualification from WSP disability benefits is consistent with the general principle that because RCW 43.43.040 is the only disability benefit scheme immediately available to WSP officers disabled in the line of duty,[15] we liberally construe it in favor of recipient eligibility.[16]

---

[14] RCW 43.43.040(1)(c). Merino argues that this provision demonstrates the legislature's intent to exclude other reasons for denying benefits to disabled officers. We agree: The legislature chose to deny disability payments on the basis of willfully tortious or criminal conduct only if the officer was engaged in such disreputable conduct when the disabling injury occurred. RCW 43.43.040(1)(c). Based on the legislature's language, we assume that it could have, but chose not to, allow WSP to revoke an already disabled officer's benefits if the officer later commits such tortious or criminal conduct. Here, however, it is undisputed that Merino's disability resulted from an injury during line duty, *not* from his "willfully tortious or criminal conduct." RCW 43.43.040(1)(c). Thus, he does not fall within the legislature's narrow exemption.

[15] When the legislature enacted RCW 43.43.040 as a disability scheme to replace LEOFF for WSP officers, it simultaneously denied them the opportunity to participate fully in LEOFF. *See* RCW 43.43.290; *see also* CP at 235 (explaining that WSP troopers are subject to the WSP's disability system, which is separate from LEOFF), and 1951-1953 Op. Att'y Gen. No. 274, 1952 WL 44888, at *1 ("[A] disabled [trooper] does not participate in the retirement system and therefore has no way of building up his reserve in order that he may receive full benefit of the retirement upon reaching retirement age. The legislature made no provision to take care of this situation.").

Moreover, because RCW 43.43.040's disability scheme is specific to WSP officers, it prevails over the more general LEOFF law enforcement disability scheme in ch. 41.26 RCW. *See Chinn v. City of Spokane*, 173 Wn. App. 89, 95, 293 P.2d 401 (2013) ("Where one provision treats a subject in general terms and another treats the same subject in a more detailed way, the specific prevails over the general absent a contrary legislative intent.") (citing *Wells Fargo Bank, NA v. Dep't of Revenue*, 166 Wn. App. 342, 358-59, 271 P.3d 268, *review denied*, 175 Wn.2d 1009 (2012)).

[16] Washington courts follow the rule "'that pension legislation must be liberally construed most strongly in favor of the beneficiaries.'" *Anthis v. Copland*, 173 Wn.2d 752, 768, 270 P.3d 574 (2012) (quoting *Hanson v. City of Seattle*, 80 Wn.2d 242, 247, 493 P.2d 775 (1972)); *see also Harris v. Dep't of Labor & Indus.*, 120 Wn.2d 461, 488, 843 P.2d 1056 (1993) (holding that "[a] retirement program should be construed liberally in favor of the retired worker"). Because the legislature crafted RCW 43.43.040 to function as a pension for disabled WSP troopers, we apply this principle here as well.

WSP asserts that Merino's reading of the statute would compel it to employ a convicted felon as a WSP officer. This assertion is incorrect: The statute did not prohibit WSP's terminating Merino's WSP employment when he was convicted of a felony. Because Merino's "employment [contract] include[d] service connected disability rights, those rights . . . vested at the instant [he was] injured in the course of his employment."[17] *See Johnson*, 52 Wn.2d at 373.

## B. Duration

WSP's interpretation of the legislature's statutory scheme for disabled WSP troopers would require us to read into RCW 43.43.040(2)(a) a nonexistent restriction of disability payments—limiting such payments to the duration of the trooper's WSP employment, without

---

Furthermore, RCW 43.43.290 prohibits an officer on WSP disability status from acquiring ongoing service credit for purposes of WSP's standard retirement system. Thus, a disabled WSP officer who does not recover from his or her disability will never be able to access the standard WSP retirement system benefits, despite his or her status as a WSP employee; instead, the officer will be limited to the disability status payments provided by RCW 43.43.040.

[17] In *Johnson*, the Washington Supreme Court reached a similar result. Johnson was a city policeman who became disabled in the line of duty but who was subsequently dismissed from employment because of misconduct. *Johnson*, 52 Wn.2d at 371. His city employer terminated his disability payments when he was dismissed from the police force. *Johnson*, 52 Wn.2d at 372. Interpreting ch. 41.20 RCW (which, like RCW 43.43.040, is separate from the LEOFF statute), the court held that (1) the city's action was improper; and (2) Johnson's termination ended his employment as a policeman; but (3) terminating Johnson's employment as a policeman "did not affect his vested right to disability benefits," over which the disciplinary board had no jurisdiction. *Johnson*, 52 Wn.2d at 373.

Again, although the construction of ch. 41.20 RCW does not control our reading of ch. 43.43 RCW, we find its similarity persuasive. *See, e.g., Briggs v. Nova Servs.*, 166 Wn.2d 794, 803 n.4, 213 P.3d 910 (2009) (finding textual similarity between federal and state statutes persuasive). Furthermore, our legislature constructed RCW 43.43.040 analogously to the statutory disability benefits in *Johnson* (interpreting ch. 41.20 RCW, governing municipal police relief and pensions) and *Newlun* (interpreting ch. 41.26 RCW, governing the LEOFF system). All three statutory provisions serve the same purpose of ensuring that disabled law enforcement personnel are compensated for their sacrifices in the line of duty. RCW 41.26.020; former RCW 41.20.060 (1998); RCW 43.43.040(1).

12

regard to the duration of the trooper's disability, especially when, as here, the disability continues after WSP employment ends. As we explain above, WSP's terminating Merino's WSP employment when he violated WSP regulations and was convicted of a felony did not terminate his preexisting, vested disability benefits. On the contrary, the legislature's RCW 43.43.040 provision of disability payments to WSP troopers injured in the line of duty entitle injured troopers, such as Merino, to continue receiving these disability payments as long as the disability continues. *See* RCW 43.43.040(2)(a).

Consistent with this reading of the statute's plain language, we further note that our legislature allocated disciplinary and disability decisions between two separate entities in establishing (1) a WSP "trial board" with jurisdiction over officer discipline and discharge, RCW 43.43.070; and (2) a WSP "disability retirement board" with jurisdiction over disability decisions.[18] WAC 446-40-060. Significantly, the legislature did not give this WSP disciplinary trial board jurisdiction to revoke a trooper's disability benefits.[19] *See* RCW 43.43.070-.090. The

---

[18] Ch. 446-40 WAC governs procedures for placing or removing WSP officers from ch. 43.43 RCW disability status to active status, and vice versa. *See* WAC 446-40-030. In establishing these procedures, the legislature limited the WSP chief's disability review to "medical history, reports, doctors' analyses and the like" when removing an officer from disability status. WAC 446-40-050. The WSP chief's decision is appealable to the WSP disability retirement board, whose review is similarly limited to "reports or testimony of mental or physical examinations of the [applicant]." WAC 446-40-070(2). The legislature did not permit the WSP chief or the disability retirement board to consider violation of WSP regulations when determining whether to change a disability benefit recipient's disability status. *See* WAC 446-40-050, -070. Thus, WSP can change a recipient's status only if the condition precedent (the disability) no longer exists. *See* RCW 43.43.040(2)(a).

[19] Consequently, WSP could not revoke Merino's disability benefits by terminating his WSP employment for failure to comply with WSP regulations; it is the WSP disability retirement board's duty to decide whether Merino still qualifies for disability benefits.

legislature's provision of two separate boards to handle WSP disciplinary and disability issues independently further exemplifies the legislature's intent for RCW 43.43.040 disability benefits to remain independent of the recipient's WSP employment status.

We hold that under the plain language of RCW 43.43.040, the legislature does not allow WSP to revoke vested disability benefits for injuries suffered by WSP troopers in the line of duty by terminating WSP employment, regardless of the reason for such termination. We further hold that under the plain language of this statute, Merino is entitled to receive benefits as long as his disability continues.[20]

## C. November 1999 Letter

In its response to the Washington State Patrol Troopers Association's (WSPTA) amicus curiae brief, WSP further argues that (1) Merino's disability payments never vested because he was always subject to losing them if he violated WSP regulations; and (2) Merino waived any contrary contractual obligation by WSP when he signed and returned the WSP's November 1, 1999 letter, which explained that Merino was still subject to WSP regulations, policies, and directions, and that he risked losing his disability payments if he failed to comply with those terms, regardless of whether he was still disabled. Having held that Merino's RCW 43.43.040

---

[20] A 1952 Washington State Attorney General opinion on the retirement and disability payment provisions of RCW 43.43.040 is consistent with our plain reading of this statute. 1951-1953 Op. Att'y Gen. No. 274, *supra*. The attorney general concluded that a trooper who receives disability payments under this statutory provision "*will continue to receive said compensation as long as the disability exists* and the age of retirement has nothing to do with it." 1951-1953 Op. Att'y Gen. No. 274, *supra* (emphasis added). Although this opinion addressed whether a trooper is entitled to continue receiving disability payments after reaching the retirement age of 60, its reasoning applies here, namely that the only precondition for a disabled trooper's receiving RCW 43.43.040 disability benefits is the ongoing existence of the disability as long as RCW 43.43.040(1)(c) does not preclude these benefits. *See* 1951-1953 Op. Att'y Gen. No. 274, *supra*.

disability benefits vested when he became disabled in the line of duty, we reject this argument. Again, although WSP could terminate Merino's employment for failing to comply with WSP regulations, RCW 43.43.040(2)(a) prohibits WSP from terminating his disability benefits as long as he is disabled.

Division One of our court rejected a similar agreement as binding on an employee where the State required the employee to forfeit a vested right, holding that "an agreement in which a public employee waives his or her *vested right to participate* in an applicable retirement system is void as against public policy." *Helgeson v. City of Marysville*, 75 Wn. App. 174, 182, 881 P.2d 1042 (1994).

Our legislature enacted RCW 43.43.040 to create a vested disability benefit for WSP troopers injured on the job; we are aware of no authority allowing WSP to create different conditions for disability benefit eligibility, including WSP's attempt to do so with its November 1999 letter. WSP's letter left Merino with little choice other than to sign it; the letter warned him that if he did not sign it, he risked losing his disability benefits, a condition that did not exist under the law at the time that Merino became entitled to disability benefits. As in *Helgeson*, we hold that WSP's November 1999 letter was unenforceable to revoke Merino's vested disability benefits because it was void as against public policy and contrary to the legislature's dictates in RCW 43.43.040. *See* 75 Wn. App. at 182. Accordingly, we further hold that WSP's November 1999 letter does not control whether Merino is entitled to his vested disability benefits.

The legislature's decision not to tie a WSP trooper's disability payments to continuing job performance shows that the legislature intended to create a lifetime disability scheme with benefits that vest when the officer qualifies for them upon being injured in the line of duty.

RCW 43.43.040(1). Consequently, we hold that Merino's benefits vested when he became disabled, they continue as long as his disability exists, and he did not lose them when WSP terminated him.

## ATTORNEY FEES

Merino requests statutory attorney fees under RCW 49.48.030. He argues that if he is entitled to recover past due disability benefits, then he is also entitled to attorney fees. We agree.[21]

Merino further argues that under *Bates v. City of Richland*, 112 Wn. App. 919, 51 P.3d 816 (2002), recovery of statutory disability benefits qualifies as "wages" according to the expansive definition of RCW 49.46.010(7). WSP counters that if Merino agrees his disability benefits are "wages," then he must concede that the payments were not a vested benefit. We disagree with WSP. Although the chapter containing RCW 49.48.030 (which compels a court to award attorney fees for recovery of wages) does not define "'wage,' courts have applied the definition contained in [RCW 49.46.010(7)]." *Bates*, 112 Wn. App. at 939. Moreover, "Washington courts have interpreted RCW 49.48.030 broadly, and [have awarded] attorney fees . . . for breach of an employment contract." *Bates*, 112 Wn. App. at 940 (citing *Gaglidari v. Denny's Rests., Inc.*, 117 Wn.2d 426, 450-51, 815 P.2d 1362 (1991)).

---

[21] RCW 49.48.030 provides:
> In any action in which any person is successful in recovering judgment for wages or salary owed to him or her, reasonable attorney's fees, in an amount to be determined by the court, shall be assessed against said employer or former employer: PROVIDED, HOWEVER, That this section shall not apply if the amount of recovery is less than or equal to the amount admitted by the employer to be owing for said wages or salary.

In *Bates*, Division Three of our court further held that

> awards for attorney fees under RCW 49.48.030 are not limited to judgments for wages or salary earned for work performed, but, rather, that attorney fees are recoverable under RCW 49.48.030 whenever a judgment is obtained for *any type of compensation due by reason of employment.* Pensions are deferred compensation for work performed.

112 Wn. App. at 940 (emphasis added) (citing *Bakenhus v. City of Seattle*, 48 Wn.2d 695, 698, 296 P.2d 536 (1956)). Even if we were to accept WSP's argument that the pension benefits in *Bates* are distinguishable from Merino's disability benefits, Merino's disability payments are still "compensation due by reason of employment"; thus, he is entitled to attorney fees under RCW 49.48.030. *Bates*, 112 Wn. App. at 940.

We hold that the legislature enacted RCW 43.43.040 to provide a vested, ongoing disability payment system to individuals disabled as WSP officers while serving in the line of duty. Merino fulfilled this contingency[22] in February 1994 upon becoming disabled as a result of injury on the job, at which point his benefits vested.[23] The legislature did not condition continued receipt of these payments on continued employment with the WSP or continued good behavior; on the contrary, only recovery from the disability could result in discontinuing these

---

[22] Nor do we agree with WSP's argument that RCW 43.43.040 disability benefits are "contingent benefits" and are thus exempt from the definition of "wages" for purposes of RCW 49.48.030. Suppl. Br. of Resp't at 3 (citing *Teamsters, Local 117 v. Nw. Beverages, Inc.*, 95 Wn. App. 767, 768-69, 976 P.2d 1262 (1999) (holding that unclaimed sick leave is "a contingent benefit due only in the event an employee misses work due to illness" and, consequently, is not within the definition of "wages" under either ch. 49.48 RCW or ch. 49.46 RCW)). But unclaimed sick leave is not comparable to vested compensatory disability payments which Merino was entitled to receive by virtue of being disabled, a condition he already met.

[23] The WSP cites no authority for its position that if Merino asserts that his disability compensation is classified as wages for purposes of seeking attorney fees under RCW 49.48.030,

No. 43865-8-II

benefits. RCW 43.43.040(1). Furthermore, because the legislature adopted a broad interpretation of "wages" under RCW 49.46.010(7), RCW 49.48.030 compels the superior court to award Merino reasonable attorney fees here.

We reverse the superior court's grant of summary judgment in favor of WSP and the superior court's denial of summary judgment for Merino. And we remand to the superior court for entry of summary judgment in favor of Merino against WSP and for calculation of Merino's attorney fees.

Hunt, J.

We concur:

Worswick, C.J.

Penoyar, J.P.T.

---

then he forfeits his earlier argument that they are vested benefits. Consequently, we do not address this argument. RAP 10.3(a)(6); *Cowiche Canyon Conservancy*, 118 Wn.2d at 809.

18