# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| DOUGLAS MERINO and KAY MERINO, husband and wife,<br><br>        Appellants,<br><br>    v.<br><br>STATE OF WASHINGTON, DEPARTMENT OF RETIREMENT SYSTEMS,<br><br>        Respondents. | No.  55353-8-II<br><br><br>UNPUBLISHED OPINION |

WORSWICK, J. — Douglas and Kay Merino appeal the superior court's order affirming a Department of Retirement Systems (Department) ruling that under the Washington State Patrol Retirement System (WSPRS), Kay[1] is not entitled to a future survivor benefit.  This case presents an unusual fact pattern where Douglas, an inactive member of the Washington State Patrol (WSP) on job-related disability status, committed a felony and was subsequently terminated.  Douglas then withdrew his funds from WSPRS.  Notwithstanding this withdrawal, the Merinos sought a declaratory order from the Department stating that Kay had a right to a spousal survivor allowance in the event they remain married and Douglas predeceases her.  The Department answered in the negative and the Department's presiding officer entered a

---

[1] We use first names to avoid confusion.  No disrespect is intended.

declaratory order granting the Department's motion for summary judgment and denying the Merinos' motion for summary judgment. The superior court affirmed.

On appeal, the Merinos argue that under the WSPRS retirement statute, RCW 43.43.270, Kay is entitled to survivor benefits because Douglas was a member of the WSPRS at the time of disability. The Department argues that Douglas ceased to be a member of the WSPRS when he withdrew his funds from the WSPRS and that Kay is therefore not entitled to survivor benefits. The Department alternatively argues that because Douglas withdrew his funds from the WSPRS account, he is therefore not receiving a retirement allowance, and Kay's survivor benefit is zero dollars under the plain language of the statute. We agree with the Department's alternative argument. Thus, we affirm.

FACTS

I. DOUGLAS MERINO'S HISTORY WITH WSP AND *MERINO* I

The Washington State Patrol hired Douglas in 1978. He also became a member of the Public Employees Retirement System Plan Two (PERS 2). In 1979, Douglas became an officer with WSP, joined WSPRS, and withdrew his PERS 2 contributions. Douglas and Kay have been married since his time in the WSP and Kay would be his surviving spouse if she remains his spouse and he predeceases her.

Douglas left the WSP in 1985 and he withdrew the contributions he made into his WSPRS account. He rejoined the WSP in 1986 and also rejoined WSPRS under "Plan One."

2 Admin. Record (AR) at 219.  He served as a trooper with the WSP until 1994 when he was placed on job-related disability.  Douglas began receiving disability compensation in 1994.[2]

In 2008, a jury convicted Douglas of two felony counts of theft based on his ties to an insurance fraud scheme.  *State v. Merino*, noted at 155 Wn. App. 1039 (2010) (unpublished) (*Merino* I).[3]  After Douglas's conviction, the WSP chief conducted a hearing to determine whether Douglas had violated WSP regulations, which Douglas was required to follow while receiving disability payments.[4]  *Merino v. State*, 179 Wn. App. 889, 893-94, 320 P.3d 153 (2014) (*Merino* II).  After finding that Douglas had violated WSP regulations, the chief terminated Douglas's WSP employment.  *Merino* II, 179 Wn. App. at 894.

---

[2] Douglas received disability compensation under RCW 43.43.040, which details compensation for WSP employees who are placed on disability status after an injury.

[3] We affirmed Douglas's convictions on appeal.  *Merino* I, noted at 155 Wn. App. 1039, 2010 WL 1687734, at *1.

[4] The *Merino* II court explained:

> On November 1, 1999, more than five years after becoming disabled, Merino received a certified letter that the WSP sent to all troopers on disability status at that time. This letter (1) confirmed that Merino was an "employee on inactive status due to a disability," (2) informed him that he must continue to comply with WSP regulations and policies, (3) required him to sign and to return the letter, and (4) threatened potential loss of his disability payments if he did not do so. . . . Merino promptly signed and returned the letter.

179 Wn. App. at 893.

## II. *MERINO* II

In 2011, the Merinos sued the State, WSP, and the Department. *Merino* II, 179 Wn. App. at 894. The superior court granted the State's motion for summary judgment dismissal. *Merino* II, 179 Wn. App. at 892. We reversed, holding that Douglas was entitled to disability benefits because they vested when he became disabled in the line of duty.[5] *Merino* II, 179 Wn. App. at 895, 903. We further held that Douglas was entitled to disability benefits as long as his disability continues. *Merino* II, 179 Wn. App. at 903. However, we noted that the disability benefits existed to compensate injured officers for employment-generated wages that their disabilities had taken from them, not to compensate them for continued employment. *Merino* II, 179 Wn. App. at 899.

## III. PROCEDURAL HISTORY

In October 2009, shortly after his conviction, Douglas asked the Department about his retirement options. The Department informed him that it does not determine WSP disability benefits and that he would be eligible for a WSPRS retirement at age 60. The Department then provided Douglas with an estimate of his potential retirement benefits.

In November 2009, Douglas submitted a "Request for Refund of Retirement Contributions" form to the Department. 2 AR at 201-02. On the form, Douglas elected a cash withdrawal of the funds accumulated in his WSPRS retirement account. Above Douglas's

---

[5] "We hold that under the plain language of RCW 43.43.040, the legislature does not allow WSP to revoke vested disability benefits for injuries suffered by WSP troopers in the line of duty by terminating WSP employment, regardless of the reason for such termination." *Merino* II, 179 Wn. App. at 903.

notarized signature, the Request for Refund form states, in relevant part, "I have read this document and understand that by electing to withdraw or transfer my employee contributions plus interest I cancel all rights to any future defined retirement benefits, including any survivor options." 2 AR at 202. Douglas withdrew all the contributions from his WSPRS account.

In 2018, the Merinos contacted the Department to "seek a determination of Kay Merino's right to survivor benefits in the event that Douglas predeceases her."[6] 2 AR at 214. The Department responded that it had no statutory authority to grant Kay survivor benefits. The Department explained that for Kay to be eligible for survivor benefits, Douglas would have to be a member of WSPRS Plan One but that he ceased to be a member when he withdrew his contributions from the WSPRS account. The Department further noted:

> [The Department] does not have knowledge if a WSPRS member is on disability until the member passes. WSP Human Resources notifies [the Department] of their passing. At that time, [the Department] will transition the account by either providing a survivorship benefit or paying out the contributions to beneficiary(ies), per RCW 43.43.270. *Mr. Merino's account at [the Department] is withdrawn with no contributions and/or benefit to transition.*

2 AR at 194 (emphasis added).

The Merinos petitioned the Department for review. In its petition decision, the Department's petition examiner ruled that because Douglas was never retired but instead was on disability status as an inactive member of WSP, he was not eligible for a retirement benefit. Accordingly, the petition examiner ruled that Kay was not eligible to receive a survivor's benefit

---

[6] The Merinos sought declaratory relief under RCW 7.24.020.

because Douglas was not retired and ended his membership with WSPRS when he withdrew his contributions. The petition examiner affirmed the Department's decision.

The Merinos then appealed this decision to the Department's presiding officer. The Department and the Merinos filed cross motions for summary judgment. The parties' arguments turned on interpretation of RCW 43.43.270, which provides, in pertinent part:

> (2) . . . If the member should die after retirement the member's lawful spouse or lawful domestic partner shall be paid an allowance which shall be equal to the retirement allowance then payable to the member or fifty percent of the final average salary used in computing the member's retirement allowance, whichever is less. . . .
>
> . . . .
>
> (5)(a) The provisions of this section shall apply to members who have been retired on disability as provided in RCW 43.43.040 if the officer was a member of the Washington state patrol retirement system at the time of such disability retirement.

The Department argued that RCW 43.43.270 does not apply to former members who have withdrawn their contributions, as Douglas did. The Merinos argued that Douglas was guaranteed disability payments under 43.43.040 and *Merino* II, and that Kay was entitled to survivor benefits because under RCW 43.43.270(5)(a) Douglas was a "member of the Washington state patrol retirement system at the time of his disability retirement." 2 AR at 220-25.

The presiding officer issued a declaratory order on the cross motions for summary judgment in which it granted the Department's motion for summary judgment. The presiding officer ruled that when WSP terminated Douglas's position, he ceased to be a member of the WSP but continued to be a nonactive member of the WSPRS. Thus, the presiding officer

6

concluded that when Douglas withdrew his WSPRS contributions, he cancelled his right to any retirement benefit, including any survivor allowance.[7]

The Merinos timely petitioned for judicial review and the superior court affirmed the presiding officer's declaratory order. The Merinos appeal.

ANALYSIS

The Merinos argue that because Douglas's disability benefits under RCW 43.43.040(2) vested under *Merino* II, those vested benefits include the retirement survival benefits for a spouse on the death of the disabled WSP officer under RCW 43.43.270(5). The Merinos further argue that under 43.43.270(5)(a), Douglas was a "member of the Washington state patrol retirement system at the time of [his] disability," and that Kay is therefore entitled to survivor benefits. Br. of Appellant at 7-8.

The Department argues that even if the Merinos are entitled to survivor allowance under RCW 43.43.270(5) and the WSPRS, the amount available to pay out to a potential survivor is

---

[7] The presiding officer explained:

> A survivor's right to receive retirement a retirement allowance is derivative in nature; it derives or flows from the benefits to which a member is entitled. A survivor is not a member of the retirement system, and does not have an independent right to a retirement allowance. When a member of the retirement system withdraws their retirement contributions, they cease to be a member of the retirement system, and their entitlement to receive retirement benefits is extinguished. As a result, there are no remaining benefits for the former member's survivor to receive.

1 AR at 13.

zero under RCW 43.43.270(2). We agree with the Department and do not reach the remaining arguments.

## I. LEGAL PRINCIPLES

### A. *Standard of Review*

The Administrative Procedures Act (APA) governs the standard of review for challenges to an agency's adjudicative decision. RCW 34.05.570(3). We grant relief from an agency order in an adjudicative proceeding if we determine that the agency erroneously interpreted or applied the law. RCW 34.05.570(3)(d). We sit in the same position as the superior court and consider the record before the agency. *Kittitas County v. Kittitas County Conservation*, 176 Wn. App. 38, 47, 308 P.3d 745 (2013).

"[W]here the original administrative decision was on summary judgment, the reviewing court must overlay the APA standard of review with the summary judgment standard." *Verizon Nw., Inc. v. Emp't Sec. Dep't*, 164 Wn.2d 909, 916, 194 P.3d 255 (2008). "Summary judgment is appropriate only where the undisputed facts entitle the moving party to judgment as a matter of law." *Verizon*, 164 Wn.2d at 916. On cross motions for summary judgment, we view the evidence in the light most favorable to the non-moving party with respect to the particular claim. CR 56; *Anderson v. Akzo Nobel Coatings, Inc.*, 172 Wn.2d 593, 597, 260 P.3d 857 (2011).

We evaluate the Department's order under the "error of law" standard. *Linville v. Dep't of Ret. Sys.*, 11 Wn. App. 2d 316, 320-21, 452 P.3d 1269 (2019), *review denied*, 195 Wn.2d 1013, 460 P.3d 181 (2020). We give substantial weight to an agency's interpretation of the law within its area of expertise. *Linville*, 11 Wn. App. 2d at 321.

When interpreting a statute, our "fundamental objective is to ascertain and carry out the Legislature's intent." *Linville*, 11 Wn. App. 2d at 321 (quoting *Citizens All. for Prop. Rights Legal Fund v. San Juan County*, 184 Wn.2d 428, 435, 359 P.3d 753 (2015)) (internal quotation marks omitted). Where the statute's meaning is plain on its face, we give effect to that meaning as an expression of legislative intent. *Linville*, 11 Wn. App. 2d at 321. We look to the ordinary meaning of words, rules of grammar, and statutory context to determine what the legislature has provided. *In re Forfeiture of One 1970 Chevrolet Chevelle*, 166 Wn.2d 834, 839, 215 P.3d 166 (2009). We use common sense analysis and avoids absurd results. *Linnville*, 11 Wn. App. 2d at 321.

B.      *Relevant Statutes and Regulations*

RCW 43.43.040 provides for disability benefits for WSP officers who are injured or incapacitated in the performance of their official duties. Under RCW 43.43.040(2)(a), officers on disability status receive one-half their compensation during the time that their disability continues in effect. This disability benefit vests at the time of injury. *Merino* II, 179 Wn. App. at 901.

The legislature also created the WSP retirement fund to pay "retirement allowances and other benefits" to retired officers. RCW 43.43.130(1). Commissioned WSP officers are eligible for the retirement plan and the fund is funded by officers' contributions: "Any employee of the Washington state patrol, upon date of commissioning, shall be eligible to participate in the retirement plan and shall start contributing to the fund immediately." RCW 43.43.130(2).

9

RCW 43.43.270 provides for retirement allowances and survivor benefits "[f]or members commissioned prior to January 1, 2003." It provides, in pertinent part:

(1) The normal form of retirement allowance shall be an allowance which shall continue as long as the member lives.

(2) . . . *If the member should die after retirement the member's lawful spouse or lawful domestic partner shall be paid an allowance which shall be equal to the retirement allowance then payable to the member or fifty percent of the final average salary used in computing the member's retirement allowance, whichever is less.* The allowance paid to the lawful spouse or lawful domestic partner shall continue as long as the spouse or domestic partner lives . . . . To be eligible for an allowance the lawful surviving spouse or lawful domestic partner of a retired member shall have been married to, or in a domestic partnership with, the member prior to the member's retirement and continuously thereafter until the date of the member's death or shall have been married to, or in a domestic partnership with, the retired member at least two years prior to the member's death. . . .

. . . .

(5)(a) The provisions of this section shall apply to members who have been retired on disability as provided in RCW 43.43.040 if the officer was a member of the Washington state patrol retirement system at the time of such disability retirement.

(b) For the purposes of this subsection, average final salary as used in subsection (2) of this section means:

(i) For members commissioned prior to January 1, 2003, the average monthly salary received by active members of the patrol of the rank at which the member became disabled, during the two years prior to the death of the disabled member.

(Emphasis added.)

10

## II. SURVIVOR BENEFITS AFTER WITHDRAWAL OF CONTRIBUTIONS

A.      Merino *II*

As an initial matter, the Merinos argue that our holding from *Merino* II, 179 Wn. App. 889, controls here and that the survivor's retirement benefits provided for in RCW 43.43.270(5)(a) are vested under *Merino* II.  We disagree.

In *Merino* II, the question was whether disability benefits under RCW 43.43.040 vest at the time of injury and continue after termination.  179 Wn. App. at 892.  It had nothing to do with retirement or survivor benefits and did not interpret or even cite RCW 43.43.270.  Accordingly, the Merinos' reliance on *Merino* II is inapt.

B.      *The Empty Fund*

The Department argues that even if the Merinos are entitled to survivor allowance under RCW 43.43.270(5) and the WSPRS, the amount a potential survivor would be paid as calculated under RCW 43.43.270(2) is zero.  We agree.

RCW 43.43.270(2) provides, in pertinent part:

> If the member should die after retirement the member's lawful spouse or lawful domestic partner shall be paid an allowance which shall be equal to the retirement allowance then payable to the member or fifty percent of the final average salary used in computing the member's retirement allowance, *whichever is less*.

RCW 43.43.270(5)(b)(i) then expounds on this:

> For the purposes of this subsection, average final salary *as used in subsection (2)* of this section means:  (i) For members commissioned prior to January 1, 2003, the average monthly salary received by active members of the patrol of the rank at which the member became disabled, during the two years prior to the death of the disabled member.

(Emphasis added.)

11

By its plain language, subsection (2) provides that survivor benefits are equal to fifty percent of final average salary *or* the retirement allowance payable to the member at the time of the member's death, *whichever is less*. Subsection (5) provides that the final average salary for survivors of those retired on disability is the equivalent to what the officer's salary would have been had they retired at the rank they had achieved at the time of the officer's disability.

The Department argues that "the retirement allowance then payable to the member" here would be zero because Douglas withdrew his funds. Br. of Resp't at 18. We agree. Douglas had no retirement allowance because he withdrew his WSPRS contributions after his conviction. Fifty percent of the final average salary will never be less than zero. Accordingly, Douglas would not be entitled to any retirement allowance or survivor benefit.

The Merinos appear to argue that RCW 43.43.270(5)(b)(i) itself creates a benefit because it provides for calculating how much a survivor is entitled to independent of RCW 43.43.270(2). But this ignores the plain language of subsection (5)(b) that explicitly refers back to subsection (2): A survivor is entitled to "the retirement allowance then payable to the member or fifty percent of the final average salary used in computing the member's retirement allowance, *whichever is less*." (Emphasis added.)

Douglas's allowance is zero because he withdrew his contributions. Subsection (5) does not state that a survivor is entitled to benefits *only* as calculated by the salary of the officer based on rank at time of disability, but instead defines "average final salary" as used in subsection (2) for situations where the officer has no average final salary because they have been on disability retirement. Fifty percent of Douglas's average final salary for purposes of RCW 43.43.270(5) is

12

still greater than zero. Thus, his survivor would not be entitled to any funds because his retirement allowance is zero.

The Merinos also argue that the survivor disability benefits are paid from another source than WSPRS benefits. But this is beside the point. Regardless of the source of the funds, under the plain language of RCW 43.43.270(2), the calculation for the survivor's benefit would result in zero dollars paid when a member has withdrawn his or her WSPRS contributions.

To hold otherwise would allow all disabled officers to separate from the WSP, withdraw their funds, and still be entitled to survivor's retirement benefits—even though the funding for those benefits had been withdrawn. This would burden officers who left their contributions in the WSPRS fund by forcing them to pay survivor's benefits for an officer who withdrew from the fund. Officers who leave their funds in WSPRS would be paying for others' double recovery.

This is not what the legislature intended and would result in the WSPRS fund being drawn on twice by disabled officers and their survivors: once when they withdraw their contributions, and a second time when the survivor receives benefits after the officer's death. This result is contrary to public policy because it would be tantamount to double recovery: the officer would withdraw their contributions and the survivor would then receive a payout, too, despite the officer having withdrawn the funds.

We hold that when Douglas withdrew his WSPRS contributions he ceased being eligible for a retirement allowance. In other words, when Douglas removed all his contributions from WSPRS, he relinquished his retirement allowance, dropping it to zero. Under RCW

43.43.270(2), this amount (zero) will always be the lesser between retirement allowance and average final salary. Accordingly, even where a survivor is entitled to disability benefits, the survivor will not receive benefits under RCW 43.43.270 if the officer has withdrawn all contributions from the WSPRS fund.

## ATTORNEY FEES

The Merinos argue that they are entitled to attorney fees under RAP 18.1 and RCW 49.48.030. We disagree.

RAP 49.48.030 provides:

In any action in which any person is successful in recovering judgment for wages or salary owed to him or her, reasonable attorney's fees, in an amount to be determined by the court, shall be assessed against said employer or former employer: PROVIDED, HOWEVER, That this section shall not apply if the amount of recovery is less than or equal to the amount admitted by the employer to be owing for said wages or salary.

This argument fails for two reasons. First, the Merinos do not prevail and are therefore not "successful." Second, the Merinos do not show how RCW 49.48.030, a labor statute regarding recovery of fees on recovery of wages from an employer, applies when seeking benefits from a state agency that was not Douglas's employer. Accordingly, we do not award fees.

## CONCLUSION

We hold that the when Douglas withdrew his contributions from WSPRS he reduced his potential retirement allowance to zero. Because this is less than fifty percent of his final average

salary, any potential survivor would not be entitled to any payment. Accordingly, we need not reach the parties' remaining arguments. Thus, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record pursuant to RCW 2.06.040, it is so ordered.

_____
Worswick, J.

We concur:

_____
Maxa, J.

_____
Hull, J.P.T.[*]

---

[*] Judge Hull is serving as a judge pro tempore of the court pursuant to RCW 2.06.150